**HIMONT U.S.A., INC., Appellant,**

v.

**HARRIS COUNTY APPRAISAL DISTRICT and Harris County Appraisal Review Board, Appellees.**

No. 01–93–01080–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 15, 1995.

Rehearing Overruled July 27, 1995.

G. Walter McCool, Austin, for appellant.

Kenneth Wall, Houston, for appellees.

Before HUTSON–DUNN, O'CONNOR and WILSON, JJ.

## OPINION

HUTSON–DUNN, Justice.

In its sole point of error in this appeal, the appellant, Himont, U.S.A., Inc., contends that the trial court abused its discretion by ren-

dering judgment that denied Himont's request for a correction in the Harris County Appraisal District's appraisal roll for tax year 1991. We reverse and remand.

## I. Summary of Facts

The facts in this case are not disputed. TEX.R.CIV.P. 263. Himont, a Delaware corporation, owned and operated railcars subject to the jurisdiction of the Harris County Appraisal District (the district) in 1991. Himont did not render [1] its railcars for taxation in 1991. The district appraised the railcars at a value of $28,838,400. However, Himont did not own all of the railcars included in this valuation. Instead, Himont leased some of the cars from other owners. Deleting the appraised value of the leased cars would result in a total appraised value of $7,456,210. Himont also operated its railcars continually in interstate commerce, but the district included the total value of Himont's railcars without allocating the portion of the value that fairly reflected their use in Texas. Allocating the value to fairly reflect the railcars' presence and use in Texas would reduce the appraised value to $1,491,242.

On or about July 12, 1991, the district sent Himont a notice of value that listed the railcars and their appraised value. Himont did not file a written protest of the appraisal roll with the Harris County Appraisal Review Board (the board). *See* TEX.TAX CODE ANN. §§ 41.01–.47 (Vernon 1992 & Supp.1995). However, Himont did promptly contact the district once it learned of the inflated appraisal. On November 11, 1991, Himont sent a letter to the district requesting that the appraisal roll be corrected. The letter contained schedules showing the number of leased cars and indicating the Texas mileage for Himont's railcars.

The district responded over three months later. In a letter dated February 27, 1992, the district asked Himont to clarify the legal basis of its claim for allocation within 10 days. Himont responded on March 3, 1992, explaining that it did not render because it had gone through a substantial and stressful

---

1. A rendition is the "reporting of taxable property by the owner to the appraiser." Crumbley, Shapiro, & Williams, Texas Tax Service 89.01[1], at 89–3 (1990).

reorganization. Himont requested that the appraisal district consider its prior documentation. On March 11, 1992, the district again responded, this time instructing Himont to complete the forms that the district had enclosed. Himont submitted a form entitled "Schedule of Railcars Used in Interstate Commerce," and it attached additional schedules showing interstate mileage and ownership of the railcars.

The district filed a motion with the board and requested that Himont's appraisal be adjusted for the leased railcars. Himont also filed its own motion and asked the board to allocate the value of its railcars on the appraisal roll to exclude their use in interstate commerce. The board granted the district's motion, but it denied Himont's motion. Himont timely filed a notice of its intention to appeal the board's decision with the district's chief appraiser. Himont also timely sued the district and the board, appellees in this case, seeking to correct the district's appraisal roll. TEX.TAX CODE ANN. § 25.25(g) (Vernon 1992). The parties submitted the case to the trial court as an agreed case pursuant to TEX. R.CIV.P. 263, and the trial court rendered judgment denying Himont all requested relief.

## II. Analysis

In its only point of error, Himont contends that the trial court erred in applying the law to the agreed facts. Specifically, Himont argues that it is entitled to an allocation of the value of its rail cars in the district's appraisal roll for tax year 1991 in order to reflect their continuous use in interstate commerce. The parties agree that Himont's railcars were used continually outside Texas. Allocating the value to show the railcars' use in Texas would yield a $5,964,968 difference from their current appraised value.

In considering Himont's sole point of error, we address two issues: (1) whether the language of section 25.25(c)(3) of the proper-

ty tax code is applicable to the facts of this case; and (2) if so, whether Himont's failure to render its railcars for taxation precluded it from seeking a correction of the district's 1991 appraisal roll pursuant to section 25.25(c)(3). TEX.TAX.CODE ANN. § 25.25(c)(3) (Vernon 1992).

### A. Section 25.25(c)(3)

Because Himont did not follow the procedures set forth in chapters 41 or 42 of the property tax code, it is not entitled to any correction in the appraisal roll unless the language of section 25.25(c)(3) applies.[2] Section 25.25(c) provides:

> (c) At any time before the end of five years after January 1 of a tax year, the appraisal review board, on motion of the chief appraiser or of a property owner, may direct by written order changes in the appraisal roll to correct: ...

> (3) an inclusion of property that does not exist in the form or at the location described in the appraisal roll.

TEX.TAX CODE ANN. § 25.25(c)(3) (Vernon 1992).[3] As noted, the agreed statement of facts shows that an allocation of the value of Himont's railcars to fairly reflect their use in Texas would result in a total appraised value of $1,491,242. Because the remainder of the value of Himont's railcars in 1991 was allocable to other jurisdictions, Himont argues that the excess value of its property did not exist in the location described in the appraisal roll. Accordingly, this Court must determine whether section 25.25(c)(3) allows a correction for the district's refusal to account for the interstate allocation of Himont's railcars.

This is an issue of first impression in Texas. One case has held that the phrase "form ... described in the appraisal roll" in section 25.25(c)(3) refers to the physical description of the taxable property rather than its use. *Collin County Appraisal Dist. v. Northeast Dallas Assoc.*, 855 S.W.2d 843, 849 (Tex.

---

2. Section 25.25(a) provides that the appraisal roll may not be changed except as provided by section 25 or by chapters 41 and 42 of the property tax code. TEX.TAX CODE ANN. § 25.25(a) (Vernon 1992).

3. Section 25.25(c) also provides that the board may order changes in the appraisal roll to correct: (1) clerical errors that affect a property owner's liability for a tax imposed in that tax year; and (2) multiple appraisals of a property in a tax year. TEX.TAX CODE ANN. § 25.25(c)(1), (2) (Vernon 1992).

App.—Dallas 1993, no writ). The court held that the "form" of the taxable property consisted of its boundaries, shape, and configuration. *Id.* at 849. However, we find no case that interprets the phrase, "location described in the appraisal roll." The property tax code does not define the phrase, and the legislative history is inconclusive as to whether the legislature intended section 25.25(c)(3) to apply to the facts of the present case.[4]

■ Location or situs for ad valorem tax purposes is determined by whether the taxing state has a sufficient nexus with the personal property sought to be taxed to justify the tax. *See Diamond Shamrock Ref. and Mktg. Co. v. Nueces County Appraisal Dist.,* 876 S.W.2d 298, 301 n. 4 (Tex.), *cert. denied,* —— U.S. ——, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994) (central purpose behind apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction); BLACK'S LAW DICTIONARY 1244 (5th ed. 1979).[5] The Texas Constitution states that "property shall be assessed for taxation and taxes paid in the county where situated." TEX. CONST. art. VIII, § 11.[6] Further, the United States Constitution has been interpreted to require states to fairly apportion the tax situs of property that is located both within their borders and within the borders of other states. *See Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 280, 288, 97 S.Ct. 1076, 1079, 1083, 51 L.Ed.2d 326 (1977) (property tax will violate commerce clause as impermissible restraint on interstate commerce unless applied to an activity with a substantial nexus with taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to services provided by the state).

Interstate allocation involves a question of both location and use of property. Because Himont operated its railcars in interstate commerce for most of 1991, the portion of their value allocable for taxation in Texas is substantially less than reflected on the appraisal roll. The district agreed that the appraised value of railcars justified by the schedules and forms that Himont provided would be $1,491,242. Accordingly, we conclude that the portion of Himont's railcars allocable to interstate commerce does not exist at the location described in the appraisal roll.

## B. Rendition

■ Except as provided by chapter 24 of the property tax code, "a person shall render for taxation all tangible personal property used for the production of income that he owns ... on January 1" of the tax

---

**4.** Specifically, the bill analysis for section 25.25(c)(3) states the following regarding its purpose:

> At this time there is no clear authority for an appraisal review board to remove nonexistent property from the tax roll. Nonexistent property includes the property of businesses which have gone out of business prior to the beginning of the tax year and property improvements which were either demolished or moved before the beginning of the tax year.

SENATE WAYS AND MEANS COMM., BILL ANALYSIS, Tex. S.B. 379, 71st Leg., R.S. (1989). We note that the word "includes" in the bill analysis suggests that the legislature did not intend the two listed examples as the only reasons for which section 25.25(c)(3) can be used to correct the appraisal roll.

**5.** The interpretation of the TEXAS TAX CODE is governed by the Code Construction Act. TEX.TAX CODE ANN. § 1.03 (Vernon 1982). According to that Act, words that have acquired a technical or particular meaning, by legislative definition or otherwise, must be interpreted according to that specialized meaning. TEX.GOV'T CODE ANN. § 311.011(b) (Vernon 1988). The term "location" in a tax context is more appropriately a question of situs. *See, e.g., Greyhound Lines, Inc. v. Board of Equalization for the City of Fort Worth,* 419 S.W.2d 345, 348–52 (Tex.1967); *see also* BLACK'S LAW DICTIONARY (5th ed. 1979) (reference to *"See situs"* in the definition of "location").

**6.** This provision has been interpreted in accordance with the common-law principal *mobilia sequuntur personam,* which provides that the tax situs of moveable personal property may be: (1) in the taxing unit where the owner is domiciled; (2) in the taxing unit where the property has a situs of its own in a place other than where the owner is domiciled; or (3) in the taxing unit where situs has been established by statute. *Aransas County Appraisal Review Bd. v. Texas Gulf Shrimp Co.,* 707 S.W.2d 186, 189 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *City of Houston v. Morgan Guar. Int'l Bank,* 666 S.W.2d 524, 532–33 (Tex.App.—Houston [1st Dist] 1983, writ ref'd n.r.e.), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1185, 84 L.Ed.2d 332 (1985).

year in question. TEX.TAX CODE ANN. § 22.01(a) (Vernon 1992). The rendition requirement applies to railroad corporations. TEX.TAX CODE ANN. § 22.05(b)(3) (Vernon 1992). A property owner entitled to allocation must file a rendition form that provides enough information necessary to prove his entitlement and permits the chief appraiser to apply an appropriate allocation formula to the subject property.[7] State Property Tax. Bd., 34 TEX.ADMIN.CODE § 9.4022(a) (West January 1, 1994) (Application for Allocation of Value). Although Himont did not timely render its property for taxation, it did ultimately complete the forms for interstate allocation that the district provided.

The district contends that Himont cannot utilize the provisions of section 25.25(c)(3) because Himont did not render its property in accordance with section 22.01(a). We disagree. Although section 22.01(a) says that a person "shall" render tangible personal property for taxation each year, cases interpreting rendition statutes that preceded this section interpreted the word "shall" as directory rather than mandatory.[8] Further, the language of section 25.25(c) does not state that a correction of the appraisal roll is conditioned upon a taxpayer's compliance with section 22.01(a). The legislative history of chapter 22 indicates that the chapter was altered before its adoption to eliminate a penalty for not rendering property. HOUSE WAYS & MEANS COMM., BILL ANALYSIS, Tex. S.B. No. 621, 66th Leg., R.S. (1979) (amending chapter 22 to eliminate penalty for not reporting

property and changing terminology from "property information reports" to "rendition").[9] We hold that Himont's failure to render its railcars for taxation in 1991 did not preclude its reliance on section 25.25(c)(3) to correct the appraisal roll under the facts of this case.

We sustain Himont's sole point of error.

We reverse the judgment and remand this case to the trial court. We order the trial court to order the Harris County Appraisal Review Board to correct the 1991 appraisal roll to reflect the allocated value of Himont's railcars.

---

**7.** The rule was originally promulgated by the State Property Tax Board. Effective November 26, 1991, the duties and responsibilities of the board were transferred to the comptroller of public accounts. Comptroller of Public Accounts, 17 Tex.Reg. 6481–82 (1992). All forms, rules and proceedings adopted by the board remain in effect as if adopted by the comptroller until amended, repealed, withdrawn, or superseded. Act of August 25, 1991, 72nd Leg., 2nd C.S., ch. 6, § 67(c), 1991 Tex.Gen.Laws 26, 41.

**8.** *See Markowsky v. Newman,* 134 Tex. 440, 136 S.W.2d 808, 811–14 (1940) (holding that city electors who rendered property to city assessor after time fixed by statute were qualified to vote at city election on issuance of bonds for construction of an electric light and power system); *Moody v. City of Galveston,* 21 Tex.Civ.App. 16, 50 S.W. 481, 483 (1899, writ ref'd) (although

court ultimately held against taxpayers, it refused to hold that rendition of property in accordance with statutory requirements was a prerequisite to correcting an appraisal roll that included a greater amount of property than was taxable); *but see Webb County Appraisal Dist. v. New Laredo Hotel,* 792 S.W.2d 952, 953 (Tex.1990) (construing the word "may" in chapter 41 of the property tax code as mandating taxpayer's appearance before appraisal review board).

**9.** The attorney general has also expressed its opinion that there are no legal sanctions for not rendering in compliance with section 22.01. *See* Op.Tex.Att'y Gen. No. JM–981 (1988) (finding no express or implied authority for appraisal district or chief appraiser to compel a nonrendering taxpayer to produce records relating to potentially taxable personal property).