**CURTIS C. GUNN, INC., Appellant,**

v.

**BEXAR COUNTY APPRAISAL DISTRICT and Bexar County Appraisal Review Board, Appellee.**

No. 04-01-00470-CV.

Court of Appeals of Texas, San Antonio.

Jan. 9, 2002.

Rehearing Overruled Jan. 30, 2002.

J. Cary Gray, Travis Crabtree, Looper Reed & McGraw, P.C., Houston, for Appellant.

Dale Wilson, Law Office of Dale Wilson, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice,[1] PAUL W. GREEN, Justice.

PHIL HARDBERGER, Chief Justice.

This appeal raises the issue of whether Curtis C. Gunn, Inc. ("Gunn") can seek a commercial aircraft interstate allocation by filing a motion to correct under section 25.25(c)(3) of the Texas Tax Code. The trial court concluded that a motion to correct under section 25.25(c)(3) could not be used to obtain such an allocation and dismissed Gunn's claims against Bexar Appraisal Board and Bexar Appraisal Review Board (collectively "Bexar Appraisal") for lack of jurisdiction. Gunn presents two issues asserting: (1) a motion to correct under section 25.25(c)(3) is a proper means to seek a commercial aircraft interstate allocation because the failure to grant the interstate allocation involves an error in the location and use of the property; and (2) Gunn is entitled to the interstate allocation and such allocation is not unconstitutional. We conclude that a motion to correct under section 25.25(c)(3) is not a proper means to seek a commercial aircraft interstate allocation and affirm the trial court's judgment. Because this issue is dispositive of the appeal, we do not reach appellant's other issue. See TEX. R.APP. P. 47.1.

## BACKGROUND

Gunn and the Appraisal District submitted their case to the trial court based on an agreed statement of facts. Gunn is a Texas corporation, and its principal place of business is in Texas. Gunn owned an aircraft that it leased to Advantage Air Charter, Inc. ("Advantage") from September 19, 1996, through December 31, 1999. The taxation of the aircraft is the subject of the underlying suit.

From September 19, 1996, through December 31, 1999, Advantage used the aircraft to provide flights on a charter basis. Advantage did not operate the aircraft along regularly scheduled routes; instead, the flight destinations were determined by the customers chartering the aircraft. The aircraft was generally based in Texas, where it was hangared when not under charter. The principal maintenance of the aircraft was performed in Texas.

During calendar year 1997, the aircraft made 48 flight departures, with only three departures to non-Texas locations.[2] During calendar year 1998, the aircraft made 260 flight departures, with only 21 departures to non-Texas locations.[3] During calendar year 1999, the aircraft made 409 flight departures, with only 40 departures to non-Texas locations.[4] The aircraft did not remain overnight on any occasion at a location outside Texas. To the extent the aircraft had taxable situs in Texas, it was

---

1. J. Rickhoff not participating.

2. Of the three departures to non-Texas locations, one departure was to Kansas and two departures were to Mississippi.

3. The following details the 21 departures to non-Texas locations: (1) Florida—5 departures; (2) Mexico—3 departures; (3) Bahamas—2 departures; (4) Louisiana—3 departures; and (5) 1 departure to each of Alabama, Iowa, Michigan, Missouri, North Carolina, New Mexico, South Carolina, and Tennessee.

4. The following details the 40 non-Texas departures: (1) Mexico—18 departures; (2) Louisiana—4 departures; (3) Alabama—3 departures; (4) New Mexico—3 departures; (5) Iowa—2 departures; (6) Tennessee—2 departures; (7) 1 departure for each of Zimbawe, Arizona, Indiana, Kansas, Kentucky, Michigan, New Jersey, and Pennsylvania.

taxable in Bexar County for tax years 1997 through 1999.

For tax year 1997, Gunn rendered the aircraft at a value of $505,250; however, Bexar Appraisal valued the aircraft at $516,000. For tax year 1998, Gunn rendered the aircraft at a value of $505,250; however, Bexar Appraisal valued the aircraft at $577,900. For tax year 1999, Gunn rendered the aircraft at a value of $505,250; however, Bexar Appraisal valued the aircraft at $447,920. Gunn did not protest Bexar Appraisal's valuation for tax years 1997, 1998, or 1999.

On December 20, 1999, Gunn filed a motion to correct personal property account error with respect to tax years 1997, 1998, and 1999. After holding hearings, Bexar Appraisal denied the motions, and Gunn timely appealed the denial to the trial court. The trial court concluded that it lacked jurisdiction to hear Gunn's claims because Gunn could not file a motion to correct under section 25.25(c)(3) of the Texas Tax Code to obtain the commercial aircraft interstate allocation contained in section 21.05 of the Texas Tax Code.

### JURISDICTION

Gunn contends that the failure to grant an interstate allocation under section 21.05 of the Texas Tax Code ("Code") involves an error that is subject to correction under section 25.25(c)(3). Section 25.25(c)(3) permits a property owner to file a motion requesting a change in the appraisal roll to correct "the inclusion of property that does not exist in the form or at the location described in the appraisal roll." Tex. Tax Code Ann. § 25.25(c)(3) (Vernon 1992). The parties acknowledge that our sister courts have issued conflicting opinions with regard to whether section 25.25(c)(3) may be used to correct an appraisal roll that does not include a proper interstate allocation under section 21.05.

In *Himont U.S.A., Inc. v. Harris County Appraisal Dist.,* 904 S.W.2d 740, 741 (Tex.App.-Houston [1st Dist.] 1995, no writ), Himont did not render its railcars for taxation in 1991. Although Himont continually operated its railcars in interstate commerce, the tax appraisal district included the total value of the railcars on its appraisal roll without allocating the portion of the value that fairly reflected the railcars' use in Texas. *Himont U.S.A., Inc.,* 904 S.W.2d at 741. When Himont received a notice of value listing the railcars and their appraised value, Himont did not file a protest under chapter 41 of the Code. *Id.* However, Himont subsequently sent a letter requesting that the appraisal roll be corrected to reflect a proper allocation. *Id.* The appraisal district denied Himont's request, and the case was ultimately submitted to the trial court on agreed facts. *Id.* at 742. The trial court rendered judgment denying Himont all requested relief. *Id.*

On appeal, Himont argued that the excess value of its railcars allocable to other jurisdictions did not exist at the location described in the appraisal roll. *Id.* The Houston court of appeals noted that no earlier Texas case interpreted the phrase "location described in the appraisal roll" as used in section 25.25(c)(3). *Id.* at 743. The Houston court reasoned that location for ad valorem tax purposes is determined by whether the taxing state has a sufficient nexus with the personal property sought to be taxed to justify the tax. *Id.* When property is located both within the borders of Texas and within the borders of other states, the United States Constitution requires the states to apportion the tax situs or location of the property. *Id.* "Interstate allocation involves a question of both location and use of property." *Id.* The Houston court concluded that for purposes of section 25.25(c)(3), that portion of

Himont's railcars allocable to interstate commerce did not exist at the location described in the appraisal roll. *Id.*

In *Aramco Associated Co. v. Harris County Appraisal Dist.*, 33 S.W.3d 361, 363 (Tex.App.-Texarkana 2000, pet. denied), Aramco filed a motion to correct the appraisal of its aircraft contending that its value was required to be allocated because it was an instrument of interstate commerce. The Texarkana court noted the Houston court's decision in *Himont*, explaining that the Houston court interpreted the term "location" as used in section 25.25(c)(3) to mean its taxable situs rather than its physical location. *Aramco Associated Co.*, 33 S.W.3d at 365. The Texarkana court disagreed, however, that interpreting the term "location" to mean taxable situs permits the courts, under section 25.25(c)(3), to review the appraised value on the tax rolls for purposes of allocation. *Id.* Because personal property can have more than one taxable situs, if the location described on the tax roll is a taxable situs of the property, the aircraft did exist at that location, precluding review under section 25.25(c)(3). *Id.*

The Texarkana court relied on two earlier Dallas opinions to support its conclusion. *See Titanium Metals Corp. v. Dallas County Appraisal Dist.*, 3 S.W.3d 63 (Tex.App.-Dallas 1999, no pet.); *Dallas Cent. Appraisal Dist. v. G.T.E. Directories Corp.*, 905 S.W.2d 318 (Tex.App.-Dallas 1995, writ denied).

In *Titanium Metals Corp.*, personal property was listed on the appraisal roll with a value that included personal property that had been moved out of the taxing district. 3 S.W.3d at 64. Although no written protest was filed, Titanium subsequently requested a correction of the appraisal roll under section 25.25(c)(3). *Id.* at 64–65. The Dallas court noted that section 25.25 of the Code provides for late correction of appraisal roll errors only under certain, limited circumstances. *Id.* at 65. With regard to the correction permitted under section 25.25(c)(3), the court noted that the Code does not explain the meaning of the phrase "inclusion of property that does not exist in the form or at the location described in the appraisal roll." *Id.* at 66. The Dallas court interpreted the term "form" to mean a physical description of the property other than its appraised value or its use, such as real property, personal property, or an improvement to real property. *Id.* The Dallas court concluded that correction is permitted under section 25.25(c)(3) when the appraisal roll erroneously reflects that a particular form of property existed at a specified location and, in fact, no such property existed at that location. *Id.* Titanium did not dispute that personal property existed at the location described on the appraisal roll; rather, Titanium disputed that amount or value of that personal property at that location. *Id.* Because the Dallas court viewed Titanium's complaint as one relating to the "value" of the property as opposed to its "existence or nonexistence," the Dallas court held that a correction of the appraisal roll under section 25.25(c)(3) was not authorized. *Id.*

In *Dallas Cent. Appraisal Dist. v. G.T.E. Directories Corp.*, 905 S.W.2d 318, 319 (Tex.App.-Dallas 1995, writ denied), GTE sought a correction under section 25.25(c)(3) to reflect the decreased value of an office building due to ground shifts that rendered the building useless. The Dallas court noted that GTE made no attempt to have the appraisal rolls changed by protesting the appraised value under the procedures set forth in chapters 41 and 42 of the Code. 905 S.W.2d at 320. In addition, the Dallas court noted that section 25.25(d) contains a provision specifically directed at changing the appraisal roll due to an incor-

rect appraised value; however, GTE did not pursue this remedy either. *Id.* The Dallas court noted that the relief available under section 25.25(d) is not as appealing as section 25.25(c)(3) because (1) the motion by the property owner under section 25.25(d) must be filed before the taxes become delinquent, (2) an error in appraised value may only be corrected under section 25.25(d) if the incorrect appraised value exceeds the correct appraised value by⅓, and (3) the property owner is required to pay a penalty under section 25.25(d). *Id.; see also* TEX. TAX CODE ANN. § 25.25(d) (Vernon 1992). The Dallas court reasoned that if the "form" in section 25.25(c)(3) also included "appraised value" the restrictions and penalties contained in section 25.25(d) would be rendered meaningless. *Id.* at 321. Therefore, the Dallas court concluded that "form" means its identification other than its appraised value or use. *Id.* Since GTE sought a correction in appraised value, section 25.25(c)(3) did not apply. *Id.*

We agree with the reasoning of the Texarkana court in *Aramco Associated Co.* The legislature has given property owners two specific procedures to challenge appraised values on appraisal rolls under chapters 41 and 42 and under section 25.25(d). The legislature had placed restrictions on the right to challenge the appraised value in both procedures. Broadly construing "location" to permit a challenge under section 25.25(c)(3) to the allocation of the appraised value would be contrary to the legislative scheme. Concluding that section 25.25(c)(3) does not provide a means to challenge allocation under section 21.05 does not violate the open courts doctrine because Gunn had access to the courts through a challenge under chapters 41 and 42 or under section 25.25(d).

CONCLUSION

The trial court properly concluded that a motion to correct under section 25.25(c)(3) is not a proper means to seek commercial aircraft interstate allocations. Accordingly, the trial court's judgment is affirmed.