Opinion issued March 27, 2003

 





                                                             
   




In The
Court of Appeals
For The
First District of Texas




NO. 01-01-01103-CV




HARRIS COUNTY APPRAISAL DISTRICT, Appellant

V.

TEXAS GAS TRANSMISSION CORPORATION, Appellee




On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2000-40888
 



EN BANC OPINION

           Appellant, Harris County Appraisal District (the District), challenges a
judgment rendered in favor of appellee, Texas Gas Transmission Corporation (Texas
Gas), ordering the District to correct the 1995 appraisal roll to take into account
interstate allocation for an aircraft belonging to Texas Gas. We address (1) whether
a taxpayer must provide the District with information establishing entitlement to
allocation at the time of rendition and (2) whether a prior year’s appraisal roll may be
corrected under section 25.25(c)(3) of the Tax Code. See Tex. Tax Code Ann. §
25.25(c)(3) (Vernon 2001). We reverse the judgment and render judgment that Texas
Gas take nothing by way of its suit.
Facts 
          The facts are undisputed. Texas Gas was a wholly owned subsidiary of the
Williams Companies, Inc. Texas Gas owned a business aircraft that was registered
at Houston Intercontinental Airport and was taxable in Texas. The aircraft traveled
outside of Texas, but returned for repair, storage, inspection, maintenance, and
service.
          Texas Gas rendered


 the aircraft for taxation for the tax year 1995. See Tex.
Tax Code Ann. §§ 22.01(a), 22.25 (Vernon 2001) (requiring rendition of taxable
personal property and establishing place and manner of filing same).


 Texas Gas did
not include with its rendition form any information from which the District could
have determined entitlement to, or from which it could have calculated the aircraft’s
value for, allocation.


 The aircraft was listed on the District’s appraisal roll at a
market value of $5,170,000. Texas Gas did not protest the 1995 appraised value of
its aircraft.
          On December 30, 1999, Texas Gas filed a motion under section 25.25(c)(3) of
the Tax Code to correct the 1995 appraisal roll by allocating 41% of the appraised
value of its aircraft to Texas. Texas Gas submitted the aircraft’s flight logs and
analysis to support its entitlement to allocation of the aircraft’s value.
          On June 20, 2000, the District’s appraisal review board heard the motion,
which the board denied by written order on June 23, 2000. Texas Gas sued for
judicial review of the order, and the parties submitted the case to the trial court on an
agreed statement of facts. The trial court found that, in 1994, 39% of the aircraft’s
departures were from Texas. The trial court found in favor of Texas Gas and ordered
the District to reduce the 1995 appraised value of the aircraft from $5,170,000 to
$2,253,160. 
Standard of Review
          The case was tried pursuant to Texas Rule of Civil Procedure 263. See Tex.
R. Civ. P. 263. A case submitted under Rule 263, similar to a special verdict, is a
request by the parties for judgment in accordance with the applicable law. See id.; see
also see also Chiles v. Chubb Lloyds Ins. Co., 858 S.W.2d 633, 634 (Tex.
App.—Houston [1st Dist.] 1993, writ denied). There are no presumptions in favor
of the judgment because the trial court had no factual issues to resolve. Stewart v.
Hardie, 978 S.W.2d 203, 206 (Tex. App.—Fort Worth 1998, pet. denied). The only
issue on appeal is whether the trial court correctly applied the law to the agreed facts. 
Harris County Appraisal Dist. v. Transamerica Container Leasing Inc., 920 S.W.2d
678, 680 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Because the issue is
purely a question of law, our review is de novo. Stewart v. Hardie, 978 S.W.2d 203,
206 (Tex. App.—Austin 1998, pet. denied).
Interstate Allocation
          In its first issue, the District contends that Texas Gas had to show entitlement
to interstate allocation for the aircraft at the time of rendition, but failed to do so. In
its second issue, the District contends that, absent such a timely showing, Texas Gas
may not correct a prior year’s appraisal roll under section 25.25(c)(3) of the Tax
Code. 
A.      Showing Entitlement to Allocation at Time of Rendition
          The Tax Code requires taxpayers to render for taxation all tangible personal
property used for producing income on January 1 of the tax year. See Tex. Tax Code
Ann. § 22.01(a) (Vernon 2001). The word “shall” in section 22.01(a) is mandatory,
not discretionary. See Robinson v. Budget Rent-A-Car Sys., Inc., 51 S.W.3d 425, 430-31 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Although we have held that
rendition is mandatory, we have not had an opportunity to address whether a taxpayer
must also provide information showing entitlement to allocation with his rendition. 
          Section 21.03(a) of the Tax Code addresses interstate allocation:
If personal property that is taxable by a taxing unit is used continually
outside this state, whether regularly or irregularly, the appraisal office
shall allocate to this state the portion of the total market value of the
property that fairly reflects its use in this state.

Tex. Tax Code Ann. § 21.03(a) (Vernon 2001). This section does not expressly
state when a taxpayer must provide information showing entitlement to allocation. 
However, the provision under which Texas Gas sought allocation for its business
aircraft implies that a taxpayer who seeks allocation must provide information
showing entitlement to allocation at the time of rendition:



(a)If an aircraft is used for a business purpose of the owner, is
taxable by a taxing unit, and is used continually outside this state,
whether regularly or irregularly, the appraisal office shall allocate to this
state the portion of the fair market value of the aircraft that fairly
reflects its use in this state. The appraisal office shall not allocate to this
state the portion of the total market value of the aircraft that fairly
reflects its use beyond the boundaries of this state.
 
(b)The allocable portion of the total fair market value of an aircraft
described by Subsection (a) is presumed to be the fair market value of
the aircraft multiplied by a fraction, the numerator of which is the
number of departures by the aircraft from a location in this state during
the year preceding the tax year and the denominator of which is the
total number of departures by the aircraft from all locations during the
year preceding the tax year.

Tex. Tax Code Ann. § 21.055(a)-(b) (Vernon 2001) (emphasis added).



          It is the chief appraiser who determines taxable personal property’s market
value. See Tex. Tax Code Ann. § 23.01(b) (Vernon 2001). Therefore, it is also the
chief appraiser who calculates “the portion of the fair market value of the aircraft that
fairly reflects its use in this state” under section 21.055. See id; 34 Tex. Admin.
Code § 9.4033(e) (West 2002) (“A property owner who is entitled to an allocation
of property must file a rendition form that provides enough information necessary to
. . . permit the chief appraiser to apply an allocation formula appropriate to the subject
property”).


 As section 21.055 makes clear, calculating the portion of fair market
value that fairly reflects in-state usage requires information such as the number of
departures that the aircraft made from an in-state location and the number that it made
from all locations during the preceding year. See Tex. Tax Code Ann. § 25.055(b). 
These calculations must generally be done within the time required for the chief
appraiser to prepare the appraisal records. See Tex. Tax Code Ann. § 25.01(a)
(Vernon 2001) (“By May 15 or as soon thereafter as practicable, the chief appraiser
shall prepare appraisal records listing all property that is taxable in the district and
stating the appraised value of each.”); id. § 25.19 (by same date, requiring chief
appraiser to notify property owner of appraised property value under certain
circumstances); id. § 25.22(a) (by same date, requiring chief appraiser to “submit the
completed appraisal records to the appraisal review board for review and
determination of protests”). The chief appraiser cannot timely make these
calculations unless supporting information is submitted along with the rendition. Cf.
Aramco Assoc. Co. v. Harris County Appraisal Dist., 33 S.W.3d 361, 365-66 (Tex.
App.—Texarkana 2000, pet. denied) (“We recognize the taxing entity does not have
available to it the information needed to formulate an allocation. Nor can it be
expected to know that a taxpayer is entitled to an allocation unless the taxpayer
provides this information.”).
          What section 21.055 implies, the comptroller’s regulations and the Code
sections concerning them expressly state. The Code directs the comptroller to adopt
rules identifying the kinds of property subject to interstate allocation and to establish
formulas for calculating allocation ratios. See Tex. Tax Code Ann. § 21.03(b)
(Vernon 2001). The Code also mandates that any rendition forms approved by the
comptroller require “a property owner to furnish the information necessary to identify
the property and to determine its ownership, taxability, and situs.” Tex. Tax Code
Ann. § 22.24(c) (Vernon 2001). Accordingly, the comptroller has adopted rules
requiring a property owner to file a rendition form that provides enough information
to prove entitlement to allocation and to permit the chief appraiser to apply an
allocation formula appropriate to the property. See 34 Tex. Admin. Code §
9.4033(e).


 Finally, the Code requires the person filing the rendition form to
“include all information required by the form.” Tex. Tax Code Ann. § 22.24(b)
(Vernon 2001). To comply with the plain language of these statutes and this rule, a
taxpayer claiming entitlement to allocation must provide supporting information
when he submits his rendition form.
          We thus hold that a taxpayer who seeks allocation must provide information
showing entitlement to allocation at the time of rendition.
          We sustain the District’s first issue.
 
B.      Correcting Appraisal Roll under Section 25.25(c)(3)
          We have previously held that a property owner’s failure timely to render
property for taxation does not prevent a taxpayer from filing a correction of the
appraisal roll to reflect an interstate allocation within the five-year deadline set forth
in section 25.25(c)(3). See Himont U.S.A. Inc. v. Harris County Appraisal Dist., 904
S.W.2d 740, 744 (Tex. App.—Houston [1st Dist.] 1995, no writ). Several of our
sister courts, in contrast, have held that section 25.25(c)(3) does not allow a taxpayer
to correct the appraisal roll for this purpose. See Harris County Appraisal Dist. v.
Tex. E. Transmission Corp., No. 14-02-00445-CV, slip op. at 5 (Tex. App.—Houston
[14th Dist.] Feb. 27, 2003, no pet. h.); A & S Air Serv., Inc. v. Denton Cent. Appraisal
Dist., No. 2-02-042-CV, slip op. at 3-7 (Tex. App.—Fort Worth Feb. 13, 2003, no
pet. h.); Kellair Aviation Co. v. Travis Cent. Appraisal Review Bd., No. 03-02-00335-CV, slip op. at 4-9 (Tex. App.—Austin Feb. 6, 2003, no pet. h.); Corsicana Co. v.
Dallas Cent. Appraisal Dist., No. 05-01-00759-CV (Tex. App.—Dallas Feb. 21,
2002, no pet.) (not designated for publication) (citing Titanium Metals Corp. v.
Dallas County Appraisal Dist., 3 S.W.3d 63, 66 (Tex. App.—Dallas 1999, no pet.));
Curtis C. Gunn, Inc. v. Bexar County Appraisal Dist., 71 S.W.3d 425, 429 (Tex.
App.—San Antonio 2002, pet. denied); Aramco, 33 S.W.3d at 365.
 
          Section 25.25 provides in pertinent part:
(c)The appraisal review board, on motion of the chief appraiser or of
a property owner, may direct by written order, changes in the
appraisal roll for any of the five preceding years to correct:
 
(1)clerical errors that affect a property owner’s liability for a
tax imposed in that tax year;
 
(2)multiple appraisals of a property in that tax year; or
 
(3)the inclusion of property that does not exist in the form or
at the location described in the appraisal roll.

Tex. Tax Code Ann. § 25.25(c).

          In Himont, we addressed whether a taxpayer is entitled under section
25.25(c)(3) to correct the appraisal roll to reflect an interstate allocation. See Himont,
904 S.W.2d at 742. Himont operated railcars continually in interstate commerce, but
did not file a rendition. The appraisal district included the total value of the railcars
without allocating the portion of their value that fairly reflected their use in Texas. 
Id. at 741. The appraisal district sent Himont a notice of value, but Himont did not
follow any of the protest procedures under chapters 41 and 42 of the Tax Code. Id.
at 741-42. Instead, Himont sent a letter and filed multiple forms requesting a
correction in the appraisal roll to exclude the value of its railcars when used in
interstate commerce. Id. at 742. The board denied Himont’s motion. Id. Himont
filed a notice of its intention to appeal the board’s decision with the district’s chief
appraiser. Id. The parties submitted the case to the trial court as an agreed case, and
the trial court rendered judgment denying Himont all requested relief. Id. We
reversed, holding that section 25.25(c)(3) allows a correction for interstate allocation
because the portion of the property allocable to interstate commerce did not exist in
the form or at the location described in the appraisal roll. Id. at 742-44. 
          In Himont, we were faced with an issue of first impression in Texas. Id. at 742. 
We began our analysis by attempting to define the term “form . . . described in the
appraisal roll.” Id. We recognized that the Dallas court of appeals had held that
“form” referred to boundaries, shape, and configuration. Id. at 742-43 (citing Collin
County Appraisal Dist. v. Northeast Dallas Assoc., 855 S.W.2d 843, 849 (Tex.
App.—Dallas 1993, no writ)). We noted that neither the Tax Code, nor the case law,
had interpreted the phrase “location described in the appraisal roll.” Id. at 743. 
          We turned to the legislative history, specifically the bill analysis for section
25.25(c)(3):
At this time there is no clear authority for an appraisal review board to
remove nonexistent property from the tax roll. Nonexistent property
includes the property of businesses which have gone out of business
prior to the beginning of the tax year and property improvements which
were either demolished or moved before the beginning of the tax year.

Himont, 904 S.W.2d at 743 n.4 (citing Senate Ways & Means Comm., Bill
Analysis, Tex. S.B., 71st Leg., R.S., 379 (1989)) (emphasis added).
          We stated that the legislative history was inconclusive because the word
“includes” “suggests that the Legislature did not intend the two examples as the only
reasons for which section 25.25(c)(3) can be used to correct the appraisal roll.” Id.
Thus, we turned to the task of defining “location” in section 25.25(c)(3), and we
noted that location, or situs, is determined by whether the taxing state has a sufficient
nexus with the personal property sought to be taxed. Id. at 743. We also stated that
the Texas and United States Constitutions require taxing entities to allocate the
portion of the property that is located within the state and that is fairly related to
services provided by the state without discriminating against interstate commerce. 
Id. We concluded that, because interstate allocation involves a question of both
location and use of property, and because Himont operated its railcars in interstate
commerce most of the time, the portion of Himont’s railcars allocable to interstate
commerce did not exist at the “location” described in the appraisal roll. Id.
          In contrast, in Aramco Associated Co., Aramco appealed the denial of a tax
refund for the tax years 1991 through 1995 based on an allocation formula for a
commercial aircraft. Id., 33 S.W.3d at 363. Aramco filed a written protest for the tax
years 1991 and 1992 under Tax Code section 41.44, but failed to appear at the
hearing, and the protests were dismissed. Aramco, 33 S.W.3d at 364. Aramco also
filed protests for the tax years 1994 and 1995, but entered into a written settlement
agreement with the appraisal district. Id. Aramco did not file a protest for the tax
year 1993. The Texarkana Court of Appeals considered whether section 25.25(c)(3)
allowed Aramco to correct the appraisal roll for the tax year 1993. Id. at 365. The
court turned to the statutory language “form” and “location” and noted that Himont
had interpreted the term “location” in section 25.25(c)(3) to mean taxable situs, rather
than physical location.


 Id. The Aramco court noted that personal property can have
more than one situs and disagreed with Himont’s conclusion that interpreting
“location” as situs permitted courts to review the appraised value on the tax rolls for
the purposes of allocation. Id. Id. The Aramco court concluded that, because the
aircraft did exist in the form described in the appraisal roll (1969 DC-8-72 aircraft),
and because the location described in the appraisal roll was an appropriate taxable
situs, section 25.25(c)(3) was not a proper remedy for Aramco. Id.
          Similarly, in Curtis C. Gunn, Inc., Gunn rendered an aircraft for the tax years
1997, 1998, and 1999 at different values from those adopted in the district’s appraisal
roll. Id., 71 S.W.3d at 427-28. Gunn did not protest the values, but filed a motion for
interstate allocation under section 25.25(c)(3) in late 1999. Gunn, 71 S.W.3d at 427. 
After hearings, the appraisal district denied the motions, and Gunn appealed to the
trial court. Id. “The trial court concluded that it lacked jurisdiction to hear Gunn’s
claims because Gunn could not file a motion to correct under section 25.25(c)(3).” 
Id. The San Antonio Court of Appeals agreed with the reasoning in Aramco on the
basis that the Legislature had provided two specific procedures under Tax Code
sections 41.41 and 25.25(d), each with specific restrictions, to challenge appraised
values on appraisal rolls. Id. at 429. The court noted that “[b]roadly construing
‘location’ in section 25.25(c)(3) to permit a challenge to the allocation of the
appraised value would be contrary to the legislative scheme.” Id.
          Four other courts of appeals have agreed with the interpretation of section
25.25(c)(3) adopted by the courts in Aramco and Gunn. See Tex. E. Transmission
Corp., No. 14-02-00445-CV, slip op. at 5 (Fourteenth Court of Appeals); A & S Air
Serv., No. 2-02-042-CV, slip op. at 3-7 (Fort Worth Court of Appeals); Kellair
Aviation Co., No. 03-02-00335-CV, slip op. at 4-9 (Austin Court of Appeals);
Corsicana Co., No. 05-01-00759-CV (Dallas Court of Appeals).
          In view of the conflicting authorities, we revisit whether section 25.25(c)(3)
permits a correction in the appraisal roll for interstate allocation. The primary rule
of statutory interpretation is that we must ascertain and give effect to the intent of the
Legislature. See Cont’l Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d
393, 398 (Tex. 2000). In interpreting the statute, we must consider the plain language
of the statute and may consider the legislative history and the consequences from
alternative constructions. See Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 383
(Tex. 2000); see also Tex. Gov’t Code Ann. § 311.023 (Vernon 1998). 
          We begin with the plain language of the statute. The plain meaning of
“property that does not exist at the location described in the appraisal roll” obviously
refers to the actual, physical presence of property at the place described in the
appraisal roll. Defining the term “location” as meaning actual, physical location
restricts section 25.25(c)(3) to those cases in which property did not physically exist
at the appraisal roll location at any time during the taxable year. Thus, if there is
some existence at the location, section 25.25(c)(3) does not allow a change in the
appraisal roll. To hold otherwise would not give effect to the words “does not exist”
in section 25.25(c)(3). 
          We next turn to the legislative history for further clarification. The bill analysis
regarding section 25.25(c)(3) is somewhat inconclusive. It indicates that section
25.25(c)(3) addresses non-existent property that includes property of businesses that
have gone out of business and property improvements that were either demolished or
moved. See Senate Ways & Means Comm., Bill Analysis, Tex. S.B. 71st Leg.,
R.S., 379 (1989). In Himont, we noted that this list was non-exclusive. Id., 904
S.W.2d at 743 n.4. It is non-exclusive as to examples of non-existent property;
however, there is no ambiguity that the section addresses only non-existent property. 
The two examples stated in the legislative history fall under the rubric of non-existent
property. In contrast, personal property that exists, but that moves in and out of the
state during the tax year, does not.
          We also recognize that the Legislature made changes to section 25.25 in 1997,
after the Himont decision, but did not change sub-section (c)(3) or amend section
25.25 in any way that would have defeated Himont’s holding. See Act of June 1,
1997, 75th Leg., R.S., ch. 1039, §§ 26, 41, 1997 Tex. Gen. Laws 3897, 3910, 3916-17. When the Legislature amends a statute in ways that do not affect the
interpretation of that statute previously given by courts, we presume that the
Legislature has consented to the courts’ statutory interpretation. See Volunteer
Council v. Berry, 795 S.W.2d 230, 240 (Tex. App.—Dallas 1990, writ denied). 
However, the Aramco decision issued in October 2000, and, although the Legislature
amended section 25.25 in May 2001, the Legislature did not change sub-section (c)(3)
or amend section 25.25 in any way affecting Aramco’s holding. See Act of May 29,
2001, 77th Leg., R.S., ch. 439, § 1, 1999 Tex. Gen. Laws 861, 861; Act of May 29,
2001, 77th Leg., R.S., ch. 1430, § 6, 1999 Tex. Gen. Laws 5109, 5111. Therefore,
the post-Himont and Aramco amendments are not helpful in ascertaining the
Legislature’s intent regarding section 25.25(c)(3).



          We now turn to the potential consequences of interpreting section 25.25(c)(3)
as we did in Himont. First, there are specific procedures in the Tax Code for
correcting an error in the appraised value of property. See Tex. Tax Code Ann. §
25.25(d) (Vernon 2001). Error in the appraised value of property may be corrected
only if the appraised value exceeds one-third of the correct appraised value, and, even
if the appraisal roll is changed, the property owner must pay a late-correction penalty
of 10% of the amount of taxes as calculated. Id. The property owner is not entitled
to a change under this subsection if the property was the subject of a protest under
chapter 41. See Tex. Tax Code Ann. § 25.25(d)(1). Finally, the appraisal roll may
not be changed if the appraised value was determined by “written agreement between
the property owner or the owner’s agent and the appraisal district.” Tex. Tax Code
Ann. § 25.25(d)(2).
          Under well-established rules of statutory interpretation, we may not interpret
one portion of a statute so as to render another portion of the statute meaningless. 
Maley v. 7111 Southwest Freeway, Inc., 843 S.W.2d 229, 231 (Tex. App.—Houston
[14th Dist.] 1992, writ denied). Interpreting section 25.25(c)(3) to allow a change in
the appraisal roll for interstate allocation in any of the preceding five years, without
penalty, nullifies the specific requirements set forth in section 25.25(d) for changing
incorrect appraisal values.
          We are now faced with the conflict between our prior decision in Himont and
the decisions of our sister courts of appeals. We are aware of the gravity of stare
decisis and the importance of adhering to precedents to maintain efficiency, fairness,
and legitimacy. We are also aware that parties rely on our prior decisions for stability
and consistency. Our responsibility in a situation such as this, however, is to
reconsider our initial decision, in which we addressed an issue of first impression, in
light of subsequent precedents. We must also determine if our initial decision, even
if wrong, might have become so well-established, with so many relying on it, that
consistency alone requires its continuation. Here, nothing shows that Texas Gas
relied upon our 1995 decision in Himont because Texas Gas, unlike Himont, filed a
rendition in 1995. Although the Attorney General relied on Himont in one opinion,



other courts have chosen not to follow Himont, so that the holding in Himont has not
become so well-established as to be impervious to change.
          Accordingly, we hold that the language “does not exist in the form or location
described in the appraisal roll” in section 25.25(c)(3) refers to property that does not
have any physical location in Texas throughout the entire taxable year. This
interpretation allows the statutory scheme to provide a limited five-year exception for
property that does not exist, while providing relief under section 25.25(d) for property
that changes value. Consequently, we hold that section 25.25(c)(3) of the Tax Code
does not permit a change in the appraisal roll for interstate allocation. We overrule
Himont to the extent that it permitted such a remedy.
          We sustain the District’s second issue.
 

Conclusion
          We reverse the judgment of the trial court and render judgment that Texas Gas
take nothing by way of its suit.
 
                                                                        Tim Taft
                                                                        Justice
Panel consists of Justices Hedges, Taft, and Jennings.
A majority of the Justices of the Court voted to consider the cause en banc. See Tex.
R. App. P. 41.2(c).

The en banc Court consists of Chief Justice Radack and Justices Hedges, Taft,
Nuchia, Jennings, Keyes, Alcala, Hanks, and Higley.

Justice Keyes, concurring.