Jim **ROBINSON**, as Chief Appraiser, Harris County Appraisal District, Appellant,

v.

**BUDGET RENT–A–CAR SYSTEMS, INC.**, d/b/a Budget Rent–A–Car, Fred Haas Motors, Inc., d/b/a Fred Haas Toyota, and Splashtown, Ltd., Appellees.

Budget Rent–A–Car Systems, Inc., d/b/a Budget Rent–A–Car, Fred Haas Motors, Inc., d/b/a Fred Haas Toyota, and Splashtown, Ltd., Appellants,

v.

Jim Robinson, as Chief Appraiser, Harris County Appraisal District, Appellee.

No. 01–98–01265–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 14, 2001.

Rehearing Overruled June 14, 2001.

James B. Stuart Daniel Doherty, Houston, for Amicus Curiae.

Barbara Baruch, Bruce S. Powers, Houston, for Appellant.

Joseph Marion Harrison, Floresville, for Appellee.

Panel consists of Chief Justice SCHNEIDER and ANDELL * and DUGGAN **, JJ.

## MAJORITY OPINION

SCHNEIDER, Chief Justice.

Taxpayers filed a motion for rehearing. We deny the motion, but withdraw our original opinion of August 31, 2000, and issue this one in its stead. We also withdraw the dissent of August 31, 2000, and reissue it on this date without change.

This case addresses whether the rendition provisions of Tax Code sections 22.01(a) and (b) are directory or mandatory, and whether compliance with such provisions can be judicially compelled. This is also an appeal on attorney's fees. We reverse the judgment on the Tax Code issue and render judgment for the Ap-

---

* The Honorable Eric Andell, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment

** The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

praiser, holding the statute requiring rendition is mandatory. We affirm the judgment of the trial court as it relates to the denial of attorney's fees.

### Facts and Procedural History

The facts of this case are undisputed. Budget Rent–A–Car, Fred Haas Toyota, and Splashtown, Ltd. ("Taxpayers") were in business within the Harris County Appraisal District. Each owned, or managed and controlled, income producing personal property, but did not render such property for taxation for 1998. Jim Robinson, Chief Appraiser of the Harris County Appraisal District ("the Appraiser"), sought to compel Taxpayers to render personal property for taxation in accordance with Tax Code sections 22.01(a) and (b). Taxpayers counterclaimed for attorney's fees and declaratory relief. The parties filed cross-motions for summary judgment. The trial court granted Taxpayers' motion for summary judgment, ordering that they recover judgment on their counterclaims and all costs, but denying recovery of attorney's fees. The trial court also denied Taxpayers' motion for attorney's fees under the Uniform Declaratory Judgments Act and Rule of Civil Procedure 13. The Appraiser appeals the grant of summary judgment in favor of Taxpayers, and Taxpayers appeal on the issue of attorney's fees.

### Standard of Review

■ The summary judgment rule provides a method of summarily ending a case that involves only a question of law and no fact issues. Tex.R. Civ. P. 166a (c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Cigna Ins. Co. v. Rubalcada*, 960 S.W.2d 408, 411–12 (Tex.App.—Houston [1st Dist.] 1998, no pet.). When, as here, both sides move for summary judgment, and the trial court grants one motion and denies the other,

we review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997); *Rubalcada*, 960 S.W.2d at 411–12. We render such judgment as the trial court should have rendered. *Agan*, 940 S.W.2d at 81; *Rubalcada*, 960 S.W.2d at 411–12.

### Are Tax Code Provisions in Sections 22.01(a) and (b) Mandatory or Directory?

■ The central issue dividing the parties is whether the rendition provisions in Tax Code sections 22.01(a) and (b) are directory or mandatory. Sections 22.01(a) and (b) provide in pertinent part:

(a) ... [A] person *shall* render for taxation all tangible personal property used for the production of income that he owns or that he manages and controls as a fiduciary on January 1.

(b) When required by the chief appraiser, a person *shall* render for taxation any other taxable property that he owns or that he manages and controls as a fiduciary on January 1.

Tex. Tax Code Ann. § 22.01(a)-(b) (Vernon 1992) (emphasis added).

■ We generally construe the word "shall" as mandatory, unless legislative intent suggests otherwise. *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex. 1999); *Schepps v. Presbyterian Hosp.*, 652 S.W.2d 934, 936 (Tex.1983). In determining whether the legislature intended a provision to be mandatory or directory, we consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction. *Albertson's*, 984 S.W.2d at 961; *Schepps*, 652 S.W.2d at 936 (citing *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (1956)). In determining plain meaning,

"[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). The plain meaning of the term "shall" in sections 22.01(a) and (b) supports a mandatory construction of the rendition provisions.

Taxpayers contend the legislative history of section 22.01 suggests a directory construction. Specifically, Taxpayers argue that because the legislature chose not to put a penalty provision in section 22.01 for failing to render, and has not enacted a penalty provision since that time, it must have intended section 22.01 to be directory. We disagree. The Texas Supreme Court has stated, "[w]hile failure to enact a bill may arguably be some evidence of intent, other reasons are equably inferable. Lack of time for consideration, opposition by a particular member or committee chair, efforts of special interest groups, or any other unidentified extraneous factor may, standing alone or combined together, act to defeat a legislative proposal regardless of the legislature's collective view of the bill's merits." *El Chico Corp. v. Poole,* 732 S.W.2d 306, 314 (Tex.1987). Legislative inaction does not offer compelling evidence of legislative intent. *See* WILLIAM D. POPKIN, MATERIALS ON LEGISLATION: POLITICAL LANGUAGE AND THE POLITICAL PROCESS, § 12.04(a) (Foundation Press 2d ed.1997). Therefore, we conclude the legislative intent does not suggest that the rendition provisions in section 22.01 are directory.

■ The dissent notes that the original draft version of section 22.01, as contained in 1979 Senate Bill 62, included a penalty provision, but was later amended prior to enactment to delete the penalty. The temptation, then, is to view the rejection of proposed language as an indication that the legislature did not intend the statute to include a penalty provision. However, rejection of language is not a statement about legislative purpose or the meaning of the statute. *See* MATERIALS ON LEGISLATION: POLITICAL LANGUAGE AND THE POLITICAL PROCESS, § 10.08. The "[r]ejection of proposed language does not necessarily imply an intent to reject its substance." *See* Report to the Attorney General, *Using and Misusing Legislative History: A Re Evaluation of the Status of Legislative History in Statutory Interpretation (1989), in* MATERIALS ON LEGISLATION: POLITICAL LANGUAGE AND THE POLITICAL PROCESS § 10.08. Proposed language before enactment of a statute may be rejected because: (1) the legislature intended the language to be a part of separate legislation; (2) the language was poorly drafted; (3) the language was superfluous; (4) the language was potentially damaging to the prospects of passing the bill. *See id.* Thus, it is improper to conclude the legislature did not intend section 22.01 to have a penalty provision by comparing the pre-enactment language and the enactment language.

■ The dissent also relies upon legislative actions after the passage of the statute to find the Tax Code provisions directory. The dissent notes that three bills were introduced seeking to add a penalty for taxpayers who do not render, but none were passed. However, legislative action or inaction after a statute has taken effect is likely to be "evidence of contemporary politics rather than prior legislative intent;" thus, legislative history which comes after a statute is not necessarily indicative of the drafter's intent. *Id.* at § 12.02(a). For example, the bills containing the penalty provision may not have passed because: (1) the legislature had more pressing business; (2) the legislature may have disagreed about how to impose the penalty provision; (3) the legislature may have disagreed about what kind of penalty pro-

vision to impose; (4) the composition of the legislature may have changed; or (5) committees or lobbyists may have blocked the passage of the statute. *See id.* The failure to impose a penalty provision three times after the statute was passed does not necessarily lead to the conclusion no penalty was intended. Thus, we do not find it proper to conclude that the Tax Code provisions are directory merely because a new group of legislators unsuccessfully introduced bills seeking to add a penalty for failure to render.

 In their motion for rehearing, Taxpayers urge the legislative history of the statute suggests a directory scheme. The Code Construction Act provides that, "whether or not the statute is considered ambiguous on its face," a court construing it *may* consider, "among other matters the . . . legislative history." *See* Tex. Gov't.Code Ann. § 311.023. (Vernon 2001) (emphasis added). The Texas Supreme Court has recently addressed this issue in the context of the Tax Code. *See Fleming Foods, Inc. v. Rylander,* 6 S.W.3d 278, 283–84 (Tex.1999). In deciding what weight to give legislative history when the statute was clear and unambiguous, the Court reasoned:

> Under the Code Construction Act, *see* Tex. Gov't Code §§ 311.001–.032, which applies to the Tax Code, *see* Tex. Tax Code § 101.002, *courts may consider* prior law, the circumstances under which the law was enacted, and *legislative history* among other matters to aid them in construing a code provision "whether or not the statute is considered ambiguous on its face," Tex. Gov't.Code § 311.023. But prior law and legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its

entirety, unless there is an error such as a typographical one.

*See id.* (emphasis added). Although the dissent relies on the legislative history cited by Taxpayers to determine legislative intent, in this case we find the Tax Code provisions to be clear and unambiguous. When faced with a clear expression of legislative intent based upon the words of the statute, we decline to render the statute uncertain based upon its legislative history. Other courts also construe unambiguous statutes in accordance with their plain meaning without making an inquiry into the legislative history. *See e.g., Houston Chronicle Publ'g. Co. v. Woods,* 949 S.W.2d 492, 498 (Tex.App.—Beaumont 1997, no writ) (looking to legislative history for assistance in construing a statute "only if an examination of the literal text discloses some obfuscation or patent ambiguity"); *see also Gordon v. Western Steel Co.,* 950 S.W.2d 743, 746 (Tex.App.—Corpus Christi 1997, writ denied) (looking to legislative history only after determining the statute was ambiguous). "Legislative history may help a court discover but may not change the original meaning." *In re Sinclair,* 870 F.2d 1340, 1344 (7th Cir. 1989). That is, "[l]egislative history may show . . . that a text 'plain' at first reading has a strikingly different meaning-but [legislative history] may not be used to show an 'intent' at variance with the meaning of the text." *Id.* We find that using the legislative history in this instance would alter and disregard the express terms of a clear and unambiguous code provision, and, thus, it is not appropriate to do so.

Additionally, the Code Construction Act supports an interpretation of the word "shall" as mandatory. The Code Construction Act defines the words "may" and "shall" as follows:

(1) "May" creates discretionary authority or grants permission or a power.

(2) "Shall" imposes a duty.

TEX. GOV'T CODE ANN. § 311.016 (Vernon 1998). The Code Construction Act further states the term "shall" imposes a duty "unless the context in which the word or phrase appears necessarily requires a different construction...." *Id.* Taxpayers argue this is a situation where the context requires à different interpretation. We disagree. We must adhere to the strict interpretation of this Tax Code provision. As such, we find the rendition provision to be mandatory.

Taxpayers also rely on *Himont, U.S.A., Inc. v. Harris County Appraisal Dist.,* 904 S.W.2d 740 (Tex.App.—Houston [1st Dist.] 1995, no writ). In *Himont,* a taxpayer failed to timely render its property for taxation in a particular tax year. *Id.* at 741. The district then appraised the property. *Id.* Some of the property included in the appraisal, however, was leased instead of owned, and, thus, should not have been included. *Id.* Himont sought to correct the district's appraisal roll pursuant to the section 25.25(c)(3) of the Tax Code. *Id.* at 741–42. The district argued Himont could not utilize the correction provision because Himont did not render its property in accordance with section 22.01(a).[1] *Id.* at 742–43. We stated:

> Although section 22.01(a) says that a person "shall" render tangible personal property for taxation each year, cases interpreting rendition statutes that preceded this section interpreted the word "shall" as directory rather than mandatory.

904 S.W.2d at 744 (citing *Markowsky v. Newman,* 134 Tex. 440, 136 S.W.2d 808, 811–14 (1940)). We then concluded Himont's failure to render its property for taxation did not preclude its reliance on

section 25.25(c)(3) to correct the appraisal roll under the facts of that case. *Id.*

We distinguish our holding in *Himont* for two reasons. First, *Himont's* reliance on *Markowsky v. Newman,* 134 Tex. 440, 443, 136 S.W.2d 808, 811–14 (1940) is misplaced. *Himont,* 904 S.W.2d at 744 n. 8. In *Markowsky,* the Texas Supreme Court held the statutory provision that property owners "shall" render "on the first day of January of the current year" was not mandatory as to time. *Markowsky,* 136 S.W.2d. at 814. Our reliance on *Markowsky* in *Himont,* therefore, was limited solely to allowing the taxpayer more time to comply with the rendition statute. *Himont,* 904 S.W.2d at 744. Further, there was evidence the taxpayer did eventually comply with the rendering requirement. *Id.* Therefore, *Himont's* reliance on *Markowsky* should be limited to that set of facts.

Additionally, the subject matter in *Markowsky* was whether the taxpayer's late compliance disqualified him as a voter in a bond election. *Markowsky,* 136 S.W.2d at 810–11. The court clearly stated that a statute could be directory for some reasons and mandatory for others. *Id.* at 814. Therefore, in neither of these cases do the courts hold that compliance with the rendition provision in Tax Code section 22.01 is directory.

### *Injunction*

■ Taxpayers argue Civil Practice and Remedies Code section 65.016 is not a proper enforcement mechanism here. We disagree. Because we have already decided the rendition provisions in Tax Code sections 22.01(a) and (b) are mandatory, an appraisal district may judicially compel a non-rendering taxpayer, through injunction, to prepare and file a rendition state-

---

1. Although Himont did not timely render its property for taxation, it did ultimately com-

plete the rendition forms the district provided. *Id.* at 744.

ment, or to turn over rendition information to the appraisal district.

In *Interstate Forwarding Co. v. Vinyard,* 121 Tex. 289, 49 S.W.2d 403 (1932), a warehouse owner refused to comply with a tax assessor's demand that he furnish a list of all property stored in the warehouse on a certain date, and the names and addresses of the owners of the property in accordance with the provisions of former article 7243 of the Revised Civil Statutes, the predecessor of Tax Code section 22.04. A suit was filed under the provisions of former article 4669, the predecessor to section 65.016, seeking a mandatory injunction compelling the warehouse owner to comply with the tax assessor's demand. *See id.* at 403. The Texas Supreme Court determined that because the statute pertained to public revenues, the statute was a revenue law of this state, the remedy of which is an injunction to prevent, prohibit, or restrain the violation. *See id.* at 404.

Section 65.016 provides that "[a]t the instance of the county or district attorney or the attorney general, a court by injunction may prevent, prohibit, or restrain the violation of any revenue law of this state." TEX. CIV. PRAC. & REM.CODE ANN. § 65.016 (Vernon 1997). We find that Tax Code section 22.01, which requires the owner of property to render such property for taxation, is a revenue law of this state. As such, the statutory requirement to render is enforceable by mandatory injunction at the instance of the county attorney.

Additionally, Tax Code section 22.01 was enacted in 1979 and was amended in 1981, while section 65.016 was enacted in 1989. Because section 65.016's remedy for violation of a revenue law was enacted after the passage of the Tax Code's rendition provision, we can only assume the legislature intended section 65.016 as an enforcement mechanism for rendering under the Tax Code.

We reverse the judgment of the trial court on the Tax Code issue and render judgment in favor of the Appraiser, declaring Taxpayers are required by law to render their property for taxation and mandatorily enjoining them to render such property for tax year 1998 as well as for future years.

### *Attorney's Fees*

Following the summary judgment granted in favor of Taxpayers, Taxpayers filed motions to recover their attorney's fees pursuant to section 37.009 of the Civil Practice and Remedies Code, as well as Rule of Civil Procedure 13. This motion was denied. Taxpayers contend the trial court erred by refusing to allow them to present evidence during the attorney's fees hearing.

Additionally, after granting summary judgment in favor of Taxpayers, the trial court ruled that the Appraiser was entitled to recover $520.85 from Taxpayers' counsel as sanctions for expenses associated with certain noticed depositions that never took place.

Before turning to this point, additional background on the attorney's fees in this matter is helpful. Taxpayers filed three motions for attorney's fees:

1. Taxpayers' first request, incorporated in its cross-motion for summary judgment, sought $36,676.00. The court denied this request because both sides had legitimate positions, the Appraiser was a public official bringing suit for a public purpose, and because the court determined it would not be equitable and just to award attorney's fees to Taxpayers.

2. Taxpayers' second request for attorney's fees was included in its request for sanctions against appellant for filing a "fictitious lawsuit." Taxpayers sought over $90,000.00. The court, however,

concluded the suit was not frivolous and denied attorney's fees.

3. Taxpayers' third request for attorney's fees was in a motion for attorney's fees pursuant to section 37.009 and Rule 13. Taxpayers sought over $103,000.00. The court denied the motion. It is from this third request that Taxpayers appeal.

Taxpayers assert they were prevented from presenting evidence in support of their claim for attorney's fees at the hearing on fees. We disagree. The record from the attorney's fee hearing is 82 pages. At the hearing, Taxpayers' counsel, Mr. Joseph M. Harrison, IV, explained why Taxpayers assert attorney's fees are warranted. He also testified as to the total charges and whether the fees were reasonable and necessary. Mr. Harrison was then cross-examined. As such, we conclude the trial court did not deny Taxpayers the opportunity to present evidence at the hearing on their motion for attorney's fees.

 We will now turn to the merits of the trial court's ruling on attorney's fees. The Uniform Declaratory Judgments Act provides that "the court *may* award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997) (emphasis added).[2] Thus, the statute affords the trial court a measure of discretion in deciding whether to award attorney's fees. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex.1998). As such, the trial court's decision concerning the grant or denial of an award of attorney's fees will not be reversed on appeal absent a clear showing of an abuse of discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985); *Knighton v.*

*IBM Corp.*, 856 S.W.2d 206, 210 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

 In its findings of fact and conclusions of law, the court stated that both parties had legitimate positions, arguments, and rights to pursue. The court also determined the Appraiser was a public official bringing this suit in good faith for a public purpose, and that he had a substantial need for the determination requested to perform his official duties. The court further found the amount of Taxpayers' fees was excessive and incurred due to their own actions. The court, therefore, concluded, "while it *may* award reasonable and necessary attorney fees, it is fair and equitable that Appellees bear the cost of their own attorneys fees."

Given the facts of this case, we hold this was not an unreasonable action by the trial court. Therefore, we conclude there was no abuse of discretion by the trial court in denying attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code.

 We also review the trial court's denial of attorney's fees based on Rule 13 under an abuse of discretion standard. *Stites v. Gillum*, 872 S.W.2d 786, 788 (Tex.App.—Fort Worth 1994, writ denied); *Home Owners Funding Corp. v. Scheppler*, 815 S.W.2d 884, 889 (Tex. App.—Corpus Christi 1991, no writ). We may reverse a trial court for abusing its discretion if its decision was arbitrary or unreasonable. *Stites*, 872 S.W.2d at 788; *Home Owners*, 815 S.W.2d at 889.

The trial court determined that this suit was not frivolous and denied attorney's fees pursuant to Rule 13 because it found

---

**2.** An award of attorney's fees is not limited to the prevailing party. *Tanglewood Homes Ass'n, Inc. v. Henke*, 728 S.W.2d 39, 44–45

(Tex.App.—Houston [1st Dist.] 1987, writ refused n.r.e.).

the motion was without merit. We hold this determination was not unreasonable. Therefore, we conclude there was no abuse of discretion by the trial court in denying attorney's fees under Rule 13.

After the trial court granted Taxpayers' motion for summary judgment, the trial court awarded the Appraiser $520.85, to be paid by Taxpayers' counsel, Joseph M. Harrison, IV, pursuant to the Appraiser's motion for costs and expenses and attorney's fees under Civil Procedure Rules 203 and 215(3). Taxpayers appeal the award of fees to the Appraiser and also assert the trial court erred in denying Taxpayers' motion to vacate or modify the order.

The trial court entered its order only against Taxpayers' counsel, not Taxpayers, to pay appellant $520.85. As such, Taxpayers are not an aggrieved party and may not appeal this issue. Tex.R. Civ. P. 215.5(b). Further, Taxpayers' counsel, Joseph M. Harrison, IV, did not file a notice of appeal on his own behalf. Therefore, we lack jurisdiction to decide this issue.

Additionally, the trial court's decision on Taxpayers' motion to vacate or modify an attorney fee order, and for sanctions, can only be set aside upon a showing of an abuse of discretion. *Phillips & Akers, P.C. v. Cornwell*, 927 S.W.2d 276, 279 (Tex. App.—Houston [1st Dist.] 1996, no writ). We hold the trial court's decision was not unreasonable. We conclude the trial court did not err in denying this motion.

We overrule points of error one, two, three, and four on Taxpayers' appeal, and affirm the trial court's rulings regarding attorney's fees.

### Conclusion

We reverse the trial court's summary judgment that the tax statute was directory rather than mandatory. We affirm the trial court's rulings regarding attorney's fees.

Justice ANDELL, dissenting.

A majority of the justices of the Court voted to deny the motion for rehearing en banc.

Justice MIRABAL and Justice ANDELL dissent from the denial of the motion for rehearing en banc for the reasons given in Justice ANDELL's dissent.

ANDELL, Justice, dissenting.

I withdraw the dissent of August 31, 2000 and reissue it on this date without change. I would hold that the rendition provisions of Tax Code sections 22.01(a) and (b) are directory, not mandatory. Accordingly, I respectfully dissent.

Sections 22.01(a) and (b) of the Tax Code provide:

(a) Except as provided by Chapter 24 of this code, a person *shall* render for taxation all tangible personal property used for the production of income that he owns or that he manages and controls as a fiduciary on January 1.

(b) When required by the chief appraiser, a person *shall* render for taxation any other taxable property that he owns or that he manages or controls as a fiduciary on January 1.

Tex. Tax Code Ann. § 22.01(a), (b) (Vernon 1992) (emphasis added).

There is precedent from this Court, as well as others, construing the term "shall" in a statutory provision to be directory. *Texas Dep't of Pub. Safety v. Gratzer*, 982 S.W.2d 88, 90–91 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (statute directing that officer "shall" send notice directory, not mandatory); *accord Texas Dep't of Pub. Safety v. Guerra*, 970 S.W.2d 645, 649 (Tex.App.—Austin 1998, pet. denied) (fail-

ure of Legislature to attach consequence when hearing held outside time mandated means "shall" is directory, not mandatory). In *Dubose v. Ainsworth,* the San Antonio Court held a provision that taxpayers "shall" deliver lists of property to the city assessor and collector was directory, even though an ordinance provided that it was a criminal offense not to render property under the statute. 139 S.W.2d 307, 308 (Tex.Civ.App.—San Antonio 1940, writ dism'd).

In holding that a provision is directory, courts focus on the "Legislature's failure to attach a consequence" if a party does not comply with the statutory provision. *Guerra,* 970 S.W.2d at 649. Courts often conclude, "[i]f the Legislature had intended for [the provision] to be mandatory, it could have easily provided consequences for noncompliance." *Id.; Gratzer,* 982 S.W.2d at 91.

In my opinion, the case controlling this issue is *Himont v. Harris County Appraisal Dist.,* 904 S.W.2d 740 (Tex.App.— Houston [1st Dist.] 1995, no writ). In *Himont,* the taxpayer failed to timely render its property for taxation in a particular tax year. This Court held "although section 22.01(a) says that a person *'shall'* render tangible personal property for taxation each year, cases interpreting rendition statutes that preceded this section interpreted the word 'shall' as directory rather than mandatory." *Id.* at 744 (citing *Markowsky v. Newman,* 134 Tex. 440, 136 S.W.2d 808, 811–14 (1940) and *Moody v. City of Galveston,* 21 Tex.Civ.App. 16, 50 S.W. 481, 483 (1899), writ ref'd) (emphasis added).

Robinson contends *Himont* expands *Markowsky* too far beyond its holding. I disagree. In *Markowsky,* the Supreme Court held the statutory provision that property owners "shall" render "on the first day of January of the current year"

was *not mandatory as to time. Id.* at 814. Although the Supreme Court limited its holding to the time element in *Markowsky,* I find its reasoning equally applicable under these circumstances:

> It may be conceded that the legislature intended by the statute to require all property situated within the municipality to be inventoried to the city for the purpose of taxation, but the *failure of the legislature to restrain* by express words the inventory of property after the time fixed in the statute indicated in our minds that the time provided therein was not mandatory but directory.

*Id.* at 813 (emphasis added). Here, the Legislature also "failed to restrain" taxpayers from not rendering. As such, because *Markowsky* is instructive, I conclude *Himont* controls this matter. Thus, I further conclude the term "shall" in the rendition provisions in section 22.01(a) and (b) of the Tax Code was correctly found by the trial court to be directory rather than mandatory.

Notably, the Tax Code does not contain a provision for sanctions against a property owner who does not render. In fact, the legislative history of section 22.01 reveals the legislature did not intend for there to be a penalty. When the Tax Code was originally drafted in 1979, the drafters included a penalty provision. S.B. 621, *as introduced,* 66th Leg., R.S. (1979). However, the legislature deleted the penalty provision prior to its enactment. S.B. 621, *as enacted,* 66th Leg., R.S. (1979). Additionally, three bills have been introduced seeking to add a penalty for taxpayers who do not render. As each of these bills has died, the Legislature has expressed its intent that a failure to render under sections 22.01(a) and (b) should not have a sanction. The most recent bill to be filed sought to add a new provision that "[a] requirement under this chapter to deliver a rendition

statement or property report to a chief appraiser is mandatory." H.B. 1630, § 1, 76th Leg., R.S. (1999). Clearly, if section 22.01 were already mandatory, this bill would have been unnecessary.

The Legislature chose not to attach a penalty or to make rendition mandatory; I believe our duty is to refrain from legislating and to follow existing case law. Accordingly, I would affirm.