**HARRIS COUNTY APPRAISAL DISTRICT, Appellant,**

v.

**TEXAS GAS TRANSMISSION CORPORATION, Appellee.**

**No. 01–01–01103–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 27, 2003.

Kenneth Wall, Olson & Olson, Houston, for appellant.

David J. Kaplan, Geary, Porter & Donovan, P.C., Addison, for appellee.

Panel consists of Justices HEDGES, TAFT, and JENNINGS.

### EN BANC OPINION

TIM TAFT, Justice.

Appellant, Harris County Appraisal District (the District), challenges a judgment rendered in favor of appellee, Texas Gas Transmission Corporation (Texas Gas), ordering the District to correct the 1995 appraisal roll to take into account interstate allocation for an aircraft belonging to Texas Gas. We address (1) whether a taxpayer must provide the District with information establishing entitlement to allocation at the time of rendition and (2) whether a prior year's appraisal roll may be corrected under section 25.25(c)(3) of the Tax Code. *See* TEX. TAX CODE ANN. § 25.25(c)(3) (Vernon 2001). We reverse the judgment and render judgment that Texas Gas take nothing by way of its suit.

### Facts

The facts are undisputed. Texas Gas was a wholly owned subsidiary of the Williams Companies, Inc. Texas Gas owned a business aircraft that was registered at Houston Intercontinental Airport and was taxable in Texas. The aircraft traveled outside of Texas, but returned for repair, storage, inspection, maintenance, and service.

 Texas Gas rendered[1] the aircraft for taxation for the tax year 1995. *See* Tex. Tax Code Ann. §§ 22.01(a), 22.25 (Vernon 2001) (requiring rendition of taxable personal property and establishing place and manner of filing same).[2] Texas Gas did not include with its rendition form any information from which the District could have determined entitlement to, or from which it could have calculated the aircraft's value for, allocation.[3] The aircraft was listed on the District's appraisal roll at a market value of $5,170,000. Texas Gas did not protest the 1995 appraised value of its aircraft.

On December 30, 1999, Texas Gas filed a motion under section 25.25(c)(3) of the Tax Code to correct the 1995 appraisal roll by allocating 41% of the appraised value of its aircraft to Texas. Texas Gas submitted the aircraft's flight logs and analysis to support its entitlement to allocation of the aircraft's value.

On June 20, 2000, the District's appraisal review board heard the motion, which the board denied by written order on June 23, 2000. Texas Gas sued for judicial review of the order, and the parties submitted the case to the trial court on an agreed statement of facts. The trial court found that, in 1994, 39% of the aircraft's departures were from Texas. The trial court found in favor of Texas Gas and ordered the District to reduce the 1995 appraised

value of the aircraft from $5,170,000 to $2,253,160.

### Standard of Review

 The case was tried pursuant to Texas Rule of Civil Procedure 263. *See* Tex.R. Civ. P. 263. A case submitted under Rule 263, similar to a special verdict, is a request by the parties for judgment in accordance with the applicable law. *See id.; see also see also Chiles v. Chubb Lloyds Ins. Co.,* 858 S.W.2d 633, 634 (Tex. App.-Houston [1st Dist.] 1993, writ denied). There are no presumptions in favor of the judgment because the trial court had no factual issues to resolve. *Stewart v. Hardie,* 978 S.W.2d 203, 206 (Tex.App.-Fort Worth 1998, pet. denied). The only issue on appeal is whether the trial court correctly applied the law to the agreed facts. *Harris County Appraisal Dist. v. Transamerica Container Leasing Inc.,* 920 S.W.2d 678, 680 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Because the issue is purely a question of law, our review is de novo. *Stewart v. Hardie,* 978 S.W.2d 203, 206 (Tex.App.-Fort Worth 1998, pet. denied).

### Interstate Allocation

In its first issue, the District contends that Texas Gas had to show entitlement to interstate allocation for the aircraft at the time of rendition, but failed to do so. In its second issue, the District contends that, absent such a timely showing, Texas Gas

---

1. "Rendition" is the reporting of taxable property by the owner to the appraiser. *See* Jay D. Howell, Jr., 21 Texas Practice: Property Taxes 348, § 361 (4th ed. 2001) ("Rendition is a written list of property and valuations filed with the assessor so that the property listed thereon will bear its fair share of the burdens of government.") [hereinafter "Howell"].

2. For simplicity's sake, when a Code provision or rule that applied to a past action has

not been materially changed since the date of that action, we cite the current statute or rule.

3. "Allocating" is determining the ratio of usage of personal property within each taxable situs when the property has more than one taxable situs. *See* Howell 336, § 331 ("Allocation is a procedure used to avoid double taxation. Allocation or apportionment of situs is sometimes used where an owner's property is located in two or more taxing jurisdictions.").

may not correct a prior year's appraisal roll under section 25.25(c)(3) of the Tax Code.

## A. Showing Entitlement to Allocation at Time of Rendition

■ The Tax Code requires taxpayers to render for taxation all tangible personal property used for producing income on January 1 of the tax year. *See* TEX. TAX CODE ANN. § 22.01(a) (Vernon 2001). The word "shall" in section 22.01(a) is mandatory, not discretionary. *See Robinson v. Budget Rent–A–Car Sys., Inc.,* 51 S.W.3d 425, 430–31 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Although we have held that rendition is mandatory, we have not had an opportunity to address whether a taxpayer must also provide information showing entitlement to allocation with his rendition.

Section 21.03(a) of the Tax Code addresses interstate allocation:

If personal property that is taxable by a taxing unit is used continually outside this state, whether regularly or irregularly, the appraisal office shall allocate to this state the portion of the total market value of the property that fairly reflects its use in this state.

TEX. TAX CODE ANN. § 21.03(a) (Vernon 2001). This section does not expressly state when a taxpayer must provide information showing entitlement to allocation. However, the provision under which Texas Gas sought allocation for its business aircraft implies that a taxpayer who seeks allocation must provide information showing entitlement to allocation at the time of rendition: [4]

(a) If an aircraft is used for a business purpose of the owner, is taxable by a taxing unit, and is used continually outside this state, whether regularly or irregularly, the appraisal office shall allocate to this state *the portion of the fair market value of the aircraft that fairly reflects its use in this state.* The appraisal office shall not allocate to this state the portion of the total market value of the aircraft that fairly reflects its use beyond the boundaries of this state.

(b) The allocable portion of the total fair market value of an aircraft described by Subsection (a) is presumed to be the fair market value of the aircraft *multiplied by a fraction, the numerator of which is*

---

4. Texas Gas requested that its assessment be calculated under the allocation formula of section 21.055, which applies to business aircraft. *See* TEX. TAX CODE ANN. § 21.055 (Vernon 2001). As Texas Gas recognizes, however, section 21.055 was not enacted until 1999 and does not apply retroactively. *See* Act of May 26, 1999, 76th Leg., R.S., ch. 970, § 1, 1999 Tex. Gen. Laws 3720, 3720 (eff. June 18, 1999); TEX. GOV'T CODE ANN. § 311.022 (Vernon 1998) ("A statute is presumed to be prospective in its operation unless expressly made retrospective."); Op. Tex. Att'y Gen. No. JC–0180 (2000) (concluding that section 21.055 applies only to tax years 1999 and after). In 1995, the tax year for which Texas Gas sought allocation, the Code required only that the appraisal office "allocate to this state the portion of the total market value of the property that fairly reflects its use in this

state." *See* TEX. TAX CODE ANN. art. 21.03(a) (Vernon 2001). Texas Gas argues that section 21.055(b) provides a formula that "fairly reflects" the aircraft's use in Texas, as section 21.03(a) required, and that, although the appraisal office would not have had to apply this formula, it could have. *See* Op. Tex. Att'y Gen. No. JC–0180 ("[I]t is *not necessary* to apply section 21.055 retroactively . . . .") (emphasis added). Texas Gas also notes that a similar aircraft-allocation formula existed in 1995, albeit for commercial aircraft. *See* TEX. TAX CODE ANN. § 21.05(b) (Vernon 2001). For purposes of our discussion, and because doing so does not affect our holding, we assume without deciding that the assessment office could and would have used an allocation formula similar to that found in current section 21.055(b) had Texas Gas sought allocation for its aircraft in 1995.

*the number of departures by the aircraft from a location in this state during the year preceding the tax year and the denominator of which is the total number of departures by the aircraft from all locations during the year preceding the tax year.*

TEX. TAX CODE ANN. § 21.055(a)-(b) (Vernon 2001) (emphasis added).[5]

It is the chief appraiser who determines taxable personal property's market value. *See* TEX. TAX CODE ANN. § 23.01(b) (Vernon 2001). Therefore, it is also the chief appraiser who calculates "the portion of the fair market value of the aircraft that fairly reflects its use in this state" under section 21.055. *See id;* 34 TEX. ADMIN. CODE § 9.4033(e) (West 2002) ("A property owner who is entitled to an allocation of property must file a rendition form that provides enough information necessary to . . . permit the chief appraiser to apply an allocation formula appropriate to the subject property").[6] As section 21.055 makes clear, calculating the portion of fair mar-

ket value that fairly reflects in-state usage requires information such as the number of departures that the aircraft made from an in-state location and the number that it made from all locations during the preceding year. *See* TEX. TAX CODE ANN. § 25.055(b). These calculations must generally be done within the time required for the chief appraiser to prepare the appraisal records. *See* TEX. TAX CODE ANN. § 25.01(a) (Vernon 2001) ("By May 15 or as soon thereafter as practicable, the chief appraiser shall prepare appraisal records listing all property that is taxable in the district and stating the appraised value of each."); *id.* § 25.19 (by same date, requiring chief appraiser to notify property owner of appraised property value under certain circumstances); *id.* § 25.22(a) (by same date, requiring chief appraiser to "submit the completed appraisal records to the appraisal review board for review and determination of protests"). The chief appraiser cannot timely make these calculations unless supporting information

---

**5.** The allocation provision governing commercial aircraft, which existed in 1995, provides similarly:

(a) If a commercial aircraft that is taxable by a taxing unit is used both in this state and outside this state, the appraisal office shall allocate to this state *the portion of the fair market value of the aircraft that fairly reflects its use in this state.* The appraisal office shall not allocate to this state the portion of the total market value of the aircraft that fairly reflects its use beyond the boundaries of this state.

(b) The allocable portion of the total fair market value of a commercial aircraft that is taxable in this state is presumed to be the fair market value of the aircraft *multiplied by a fraction, the numerator of which is the product of 1.5 and the number of revenue departures by the aircraft from Texas during the year preceding the tax year, and the denominator of which is the greater of (1) 8,760, or (2) the numerator.*

(c) *During the time in which any commercial aircraft is removed from air transporta-*

*tion service for repair, storage, or inspection,* such aircraft is presumed to be in interstate, international, or foreign commerce and not located in this state for longer than a temporary period for purposes of Section 11.01 of this code.

TEX. TAX CODE ANN. § 21.05(a)-(c) (Vernon 2001) (emphasis added).

**6.** The rule now contained in section 9.4033(e) was originally promulgated by the State Property Tax Board and was contained in former section 9.4022(a) and (b) of the Texas Administrative Code. *See Aramco Assoc. Co. v. Harris County Appraisal Dist.,* 33 S.W.3d 361, 365 n. 3 (Tex.App.-Texarkana 2000, pet. denied). Former section 94.022(a) and (b) applied in tax year 1995. *See Aramco,* 33 S.W.3d at 365 n. 3 (noting that trial court based ruling on former section 9.4022(a) and (b), when plaintiff sought correction of tax records for tax years 1991 to 1995). Former section 9.4022(a) and (b) and current section 9.4033(e) are substantively similar. *Compare id.* (quoting former section 9.4022(a), (b)) *with* TEX. ADMIN. CODE § 9.4033(e) (West 2002).

is submitted along with the rendition. *Cf. Aramco Assoc. Co. v. Harris County Appraisal Dist.*, 33 S.W.3d 361, 365–66 (Tex. App.-Texarkana 2000, pet. denied) ("We recognize the taxing entity does not have available to it the information needed to formulate an allocation. Nor can it be expected to know that a taxpayer is entitled to an allocation unless the taxpayer provides this information.").

What section 21.055 implies, the comptroller's regulations and the Code sections concerning them expressly state. The Code directs the comptroller to adopt rules identifying the kinds of property subject to interstate allocation and to establish formulas for calculating allocation ratios. *See* TEX. TAX CODE ANN. § 21.03(b) (Vernon 2001). The Code also mandates that any rendition forms approved by the comptroller require "a property owner to furnish the information necessary to identify the property and to determine its ownership, taxability, and situs." TEX. TAX CODE ANN. § 22.24(c) (Vernon 2001). Accordingly, the comptroller has adopted rules requiring a property owner to file a rendition form that provides enough information to prove entitlement to allocation and to permit the chief appraiser to apply an allocation formula appropriate to the property. *See* 34 TEX. ADMIN. CODE § 9.4033(e).[7] Finally, the Code requires the person filing the rendition form to "include all information required by the form." TEX. TAX CODE ANN. § 22.24(b) (Vernon 2001). To comply with the plain language of these statutes and this rule, a taxpayer claiming entitlement to allocation must provide supporting information when he submits his rendition form.

■ We thus hold that a taxpayer who seeks allocation must provide information showing entitlement to allocation at the time of rendition.

We sustain the District's first issue.

**B. Correcting Appraisal Roll under Section 25.25(c)(3)**

■ We have previously held that a property owner's failure timely to render property for taxation does not prevent a taxpayer from filing a correction of the appraisal roll to reflect an interstate allocation within the five-year deadline set forth in section 25.25(c)(3). *See Himont U.S.A. Inc. v. Harris County Appraisal Dist.*, 904 S.W.2d 740, 744 (Tex.App.-Houston [1st Dist.] 1995, no writ). Several of our sister courts, in contrast, have held that section 25.25(c)(3) does not allow a taxpayer to correct the appraisal roll for this purpose. *See Harris County Appraisal Dist. v. Tex. E. Transmission Corp.*, 99 S.W.3d 849, 851, (Tex.App.-Houston [14th Dist.] 2003, no pet. h.); *A & S Air Serv., Inc. v. Denton Cent. Appraisal Dist.*, 99 S.W.3d 340, 342–44 (Tex.App.-Fort Worth 2003, no pet. h.); *Kellair Aviation Co. v. Travis Cent. Appraisal Review Bd.*, 99 S.W.3d 704, 706–08 (Tex. App.-Austin 2003, no pet. h.); *Corsicana Co. v. Dallas Cent. Appraisal Dist.*, No. 05–01–00759–CV, 2002 WL 244326 (Tex. App.-Dallas Feb. 21, 2002, no pet.) (not designated for publication) (citing *Titanium Metals Corp. v. Dallas County Ap-*

---

7. Sec. 9.4033. Allocation of Value
 (e) A property owner who is entitled to an allocation of property must file a rendition form that provides enough information necessary to prove that entitlement to allocation and permit the chief appraiser to apply an allocation formula appropriate to the subject property....

The form must permit the property owner to state an opinion of the total market value of the property and the amount of value that should be allocated to each taxing unit in which the property has situs.
34 TEX. ADMIN. CODE § 9.4033(e) (West 2002).

*praisal Dist.*, 3 S.W.3d 63, 66 (Tex.App.-Dallas 1999, no pet.)); *Curtis C. Gunn, Inc. v. Bexar County Appraisal Dist.*, 71 S.W.3d 425, 429 (Tex.App.-San Antonio 2002, pet. denied); *Aramco*, 33 S.W.3d at 365.

Section 25.25 provides in pertinent part:

(c) The appraisal review board, on motion of the chief appraiser or of a property owner, may direct by written order, changes in the appraisal roll for any of the five preceding years to correct:

(1) clerical errors that affect a property owner's liability for a tax imposed in that tax year;

(2) multiple appraisals of a property in that tax year; or

(3) the inclusion of property that does not exist in the form or at the location described in the appraisal roll.

TEX. TAX CODE ANN. § 25.25(c).

In *Himont*, we addressed whether a taxpayer is entitled under section 25.25(c)(3) to correct the appraisal roll to reflect an interstate allocation. *See Himont*, 904 S.W.2d at 742. Himont operated railcars continually in interstate commerce, but did not file a rendition. The appraisal district included the total value of the railcars without allocating the portion of their value that fairly reflected their use in Texas. *Id.* at 741. The appraisal district sent Himont a notice of value, but Himont did not follow any of the protest procedures under chapters 41 and 42 of the Tax Code. *Id.* at 741–42. Instead, Himont sent a letter and filed multiple forms requesting a correction in the appraisal roll to exclude the value of its railcars when used in interstate commerce. *Id.* at 742. The board denied Himont's motion. *Id.* Himont filed a notice of its intention to appeal the board's decision with the district's chief appraiser. *Id.* The parties submitted the case to the trial court as an agreed case, and the trial court rendered judgment denying Himont all requested relief. *Id.* We reversed, holding that section 25.25(c)(3) allows a correction for interstate allocation because the portion of the property allocable to interstate commerce did not exist in the form or at the location described in the appraisal roll. *Id.* at 742–44.

In *Himont*, we were faced with an issue of first impression in Texas. *Id.* at 742. We began our analysis by attempting to define the term "form ... described in the appraisal roll." *Id.* We recognized that the Dallas court of appeals had held that "form" referred to boundaries, shape, and configuration. *Id.* at 742–43 (citing *Collin County Appraisal Dist. v. Northeast Dallas Assoc.*, 855 S.W.2d 843, 849 (Tex.App.-Dallas 1993, no writ)). We noted that neither the Tax Code, nor the case law, had interpreted the phrase "location described in the appraisal roll." *Id.* at 743.

We turned to the legislative history, specifically the bill analysis for section 25.25(c)(3):

At this time there is no clear authority for an appraisal review board to remove nonexistent property from the tax roll. Nonexistent property *includes* the property of businesses which have gone out of business prior to the beginning of the tax year and property improvements which were either demolished or moved before the beginning of the tax year.

*Himont*, 904 S.W.2d at 743 n. 4 (citing SENATE WAYS & MEANS COMM., BILL ANALYSIS, Tex. S.B., 71st Leg., R.S., 379 (1989)) (emphasis added).

We stated that the legislative history was inconclusive because the word "includes" "suggests that the Legislature did not intend the two examples as the only reasons for which section 25.25(c)(3) can be used to correct the appraisal roll." *Id.*

Thus, we turned to the task of defining "location" in section 25.25(c)(3), and we noted that location, or situs, is determined by whether the taxing state has a sufficient nexus with the personal property sought to be taxed. *Id.* at 743. We also stated that the Texas and United States Constitutions require taxing entities to allocate the portion of the property that is located within the state and that is fairly related to services provided by the state without discriminating against interstate commerce. *Id.* We concluded that, because interstate allocation involves a question of both location and use of property, and because Himont operated its railcars in interstate commerce most of the time, the portion of Himont's railcars allocable to interstate commerce did not exist at the "location" described in the appraisal roll. *Id.*

In contrast, in *Aramco Associated Co.,* Aramco appealed the denial of a tax refund for the tax years 1991 through 1995 based on an allocation formula for a commercial aircraft. *Id.,* 33 S.W.3d at 363. Aramco filed a written protest for the tax years 1991 and 1992 under Tax Code section 41.44, but failed to appear at the hearing, and the protests were dismissed. *Aramco,* 33 S.W.3d at 364. Aramco also filed protests for the tax years 1994 and 1995, but entered into a written settlement agreement with the appraisal district. *Id.* Aramco did not file a protest for the tax year 1993. The Texarkana Court of Appeals considered whether section 25.25(c)(3) allowed Aramco to correct the appraisal roll for the tax year 1993.. *Id.* at 365. The court turned to the statutory language "form" and "location" and noted that *Himont* had interpreted the term "location" in section 25.25(c)(3) to mean taxable situs,

rather than physical location.[8] *Id.* The *Aramco* court noted that personal property can have more than one situs and disagreed with *Himont's* conclusion that interpreting "location" as situs permitted courts to review the appraised value on the tax rolls for the purposes of allocation. *Id.* The *Aramco* court concluded that, because the aircraft did exist in the form described in the appraisal roll (1969 DC–8–72 aircraft), and because the location described in the appraisal roll was an appropriate taxable situs, section 25.25(c)(3) was not a proper remedy for Aramco. *Id.*

Similarly, in *Curtis C. Gunn, Inc.,* Gunn rendered an aircraft for the tax years 1997, 1998, and 1999 at different values from those adopted in the district's appraisal roll. *Id.,* 71 S.W.3d at 427–28. Gunn did not protest the values, but filed a motion for interstate allocation under section 25.25(c)(3) in late 1999. *Gunn,* 71 S.W.3d at 427. After hearings, the appraisal district denied the motions, and Gunn appealed to the trial court. *Id.* "The trial court concluded that it lacked jurisdiction to hear Gunn's claims because Gunn could not file a motion to correct under section 25.25(c)(3)." *Id.* The San Antonio Court of Appeals agreed with the reasoning in *Aramco* on the basis that the Legislature had provided two specific procedures under Tax Code sections 41.41 and 25.25(d), each with specific restrictions, to challenge appraised values on appraisal rolls. *Id.* at 429. The court noted that "[b]roadly construing 'location' in section 25.25(c)(3) to permit a challenge to the allocation of the appraised value would be contrary to the legislative scheme." *Id.*

Four other courts of appeals have agreed with the interpretation of section 25.25(c)(3) adopted by the courts in *Aram-*

---

**8.** *Aramco's* interpretation of the meaning that *Himont* ascribed to "location" may not have been accurate, but the result in *Himont* was to treat that portion of property not taxable in Texas as not existing in Texas.

co and *Gunn.* *See Tex. E. Transmission Corp.*, 99 S.W.3d at 851 (Fourteenth Court of Appeals); *A & S Air Serv.*, 99 S.W.3d at 342–44 (Fort Worth Court of Appeals); *Kellair Aviation Co.*, 99 S.W.3d at 706 – 08 (Austin Court of Appeals); *Corsicana Co.*, No. 05–01–00759–CV (Dallas Court of Appeals).

■ In view of the conflicting authorities, we revisit whether section 25.25(c)(3) permits a correction in the appraisal roll for interstate allocation. The primary rule of statutory interpretation is that we must ascertain and give effect to the intent of the Legislature. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex.2000). In interpreting the statute, we must consider the plain language of the statute and may consider the legislative history and the consequences from alternative constructions. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 383 (Tex.2000); *see also* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998).

■ We begin with the plain language of the statute. The plain meaning of "property that does not exist at the location described in the appraisal roll" obviously refers to the actual, physical presence of property at the place described in the appraisal roll. Defining the term "location" as meaning actual, physical location restricts section 25.25(c)(3) to those cases in which property did not physically exist at the appraisal roll location at any time during the taxable year. Thus, if there is some existence at the location, section 25.25(c)(3) does not allow a change in the appraisal roll. To hold otherwise would not give effect to the words "does not exist" in section 25.25(c)(3).

We next turn to the legislative history for further clarification. The bill analysis regarding section 25.25(c)(3) is somewhat inconclusive. It indicates that section 25.25(c)(3) addresses non-existent property that *includes* property of businesses that have gone out of business and property improvements that were either demolished or moved. *See* SENATE WAYS & MEANS COMM., BILL ANALYSIS, Tex. S.B. 71st Leg., R.S., 379 (1989). In *Himont,* we noted that this list was non-exclusive. *Id.,* 904 S.W.2d at 743 n. 4. It *is* non-exclusive as to examples of non-existent property; however, there is no ambiguity that the section addresses *only* non-existent property. The two examples stated in the legislative history fall under the rubric of non-existent property. In contrast, personal property that exists, but that moves in and out of the state during the tax year, does not.

■ We also recognize that the Legislature made changes to section 25.25 in 1997, after the *Himont* decision, but did not change sub-section (c)(3) or amend section 25.25 in any way that would have defeated *Himont*'s holding. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1039, §§ 26, 41, 1997 Tex. Gen. Laws 3897, 3910, 3916–17. When the Legislature amends a statute in ways that do not affect the interpretation of that statute previously given by courts, we presume that the Legislature has consented to the courts' statutory interpretation. *See Volunteer Council v. Berry,* 795 S.W.2d 230, 240 (Tex. App.-Dallas 1990, writ denied). However, the *Aramco* decision issued in October 2000, and, although the Legislature amended section 25.25 in May 2001, the Legislature did not change sub-section (c)(3) or amend section 25.25 in any way affecting *Aramco*'s holding. *See* Act of May 29, 2001, 77th Leg., R.S., ch. 439, § 1, 1999 Tex. Gen. Laws 861, 861; Act of May 29, 2001, 77th Leg., R.S., ch. 1430, § 6, 1999 Tex. Gen. Laws 5109, 5111. Therefore, the post-*Himont* and *Aramco* amendments are not helpful in ascertaining the

Legislature's intent regarding section 25.25(c)(3).[9]

We now turn to the potential consequences of interpreting section 25.25(c)(3) as we did in *Himont.* First, there are specific procedures in the Tax Code for correcting an error in the appraised value of property. *See* TEX. TAX CODE ANN. § 25.25(d) (Vernon 2001). Error in the appraised value of property may be corrected only if the appraised value exceeds one-third of the correct appraised value, and, even if the appraisal roll is changed, the property owner must pay a late-correction penalty of 10% of the amount of taxes as calculated. *Id.* The property owner is not entitled to a change under this subsection if the property was the subject of a protest under chapter 41. *See* TEX. TAX CODE ANN. § 25.25(d)(1). Finally, the appraisal roll may not be changed if the appraised value was determined by "written agreement between the property owner or the owner's agent and the appraisal district." TEX. TAX CODE ANN. § 25.25(d)(2).

 Under well-established rules of statutory interpretation, we may not interpret one portion of a statute so as to render another portion of the statute meaningless. *Maley v. 7111 Southwest Freeway, Inc.,* 843 S.W.2d 229, 231 (Tex. App.-Houston [14th Dist.] 1992, writ denied). Interpreting section 25.25(c)(3) to allow a change in the appraisal roll for interstate allocation in any of the preceding five years, without penalty, nullifies the specific requirements set forth in section 25.25(d) for changing incorrect appraisal values.

We are now faced with the conflict between our prior decision in *Himont* and the decisions of our sister courts of appeals. We are aware of the gravity of *stare decisis* and the importance of adhering to precedents to maintain efficiency, fairness, and legitimacy. We are also aware that parties rely on our prior decisions for stability and consistency. Our responsibility in a situation such as this, however, is to reconsider our initial decision, in which we addressed an issue of first impression, in light of subsequent precedents. We must also determine if our initial decision, even if wrong, might have become so well-established, with so many relying on it, that consistency alone requires its continuation. Here, nothing shows that Texas Gas relied upon our 1995 decision in *Himont* because Texas Gas, unlike Himont, filed a rendition in 1995. Although the Attorney General relied on *Himont* in one opinion,[10] other courts have chosen not to follow *Himont,* so that the holding in *Himont* has not become so well-established as to be impervious to change.

 Accordingly, we hold that the language "does not exist in the form or location described in the appraisal roll" in section 25.25(c)(3) refers to property that does not have any physical location in Texas throughout the entire taxable year. This interpretation allows the statutory scheme to provide a limited five-year exception for property that does not exist, while providing relief under section

---

9. Moreover, as we noted in *Robinson,* relying on the Legislature's inaction is not a sound method. *Robinson v. Budget Rent–A–Car Sys., Inc.,* 51 S.W.3d 425, 429–30 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

10. *See* Op. Tex. Att'y Gen. No. JC–0180 (2000) ("Because we have no reason to question the *Himont* court's construction of section

25.25(c)(3) for purposes of petitions to correct appraisal rolls based on allocation of value, we conclude that a taxpayer would be entitled to file a section 25.25(c)(3) petition to correct a 1999 appraisal roll to reflect only that portion of the value of a business aircraft allocable to this state under section 21.055.").

25.25(d) for property that changes value. Consequently, we hold that section 25.25(c)(3) of the Tax Code does not permit a change in the appraisal roll for interstate allocation. We overrule *Himont* to the extent that it permitted such a remedy.

We sustain the District's second issue.

### Conclusion

We reverse the judgment of the trial court and render judgment that Texas Gas take nothing by way of its suit.

A majority of the Justices of the Court voted to consider the cause en banc.

The en banc Court consists of Chief Justice RADACK and Justices HEDGES, TAFT, NUCHIA, JENNINGS, KEYES, ALCALA, HANKS, and HIGLEY.

Justice KEYES, concurring.

EVELYN V. KEYES, Justice, concurring.

I concur in the Court's judgment and its reasoning. I write solely to observe that not only our plain-language analysis, but also section 21.02(a) of the Tax Code ("Tangible Personal Property Generally"), supports our conclusion that the term "location" in the phrase "does not exist in the form or location described in the appraisal roll" in section 25.25(c)(3) of the Tax Code means "actual, physical location." Tex. Tax Code Ann. §§ 21.02(a), 25.25(c)(3) (Vernon 2002).

Section 21.02 of the Tax Code provides:

(a) [With certain inapplicable exceptions,] tangible personal property is taxable by a taxing unit if:

(1) it is located in the unit on January 1 for more than a temporary period;

(2) it normally is located in the unit, even though it is outside the unit on January 1, if it is outside the unit only temporarily;

(3) it normally is returned to the unit between uses elsewhere and is not located in any one place for more than a temporary period; or

(4) the owner resides (for property not used for business purposes) or maintains his principal place of business in this state (for property used for business purposes) in the unit and the property is taxable in this state but does not have a taxable situs pursuant to Subdivisions (1) through (3) of this section.

Tex. Tax Code Ann. at § 21.02(a).

Section 21.02(a) harmonizes with and further supports our holding that the authority provided by section 25.25(c)(3) to correct appraisals of tangible personal property that is only intermittently in the state is "restrict[ed] to those cases in which property did not physically exist at the appraisal roll location at any time during the taxable year." *See* majority op. at 97.